## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD J. SILVERBERG | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DUPONT DE NEMOURS, INC. | : | NO. |
| -and- | : | |
| DOW, INC. | : | |
| -and- | : | |
| CORTEVA, INC. | : | |
| -and- | : | |
| INTERNATIONAL FLAVORS AND | : | |
| FRAGRANCES, INC. | : | |
| -and- | : | |
| AVANTOR, INC. | : | |
| -and- | : | |
| LIBERTY MUTUAL GROUP, INC. | : | |
| -and- | : | |
| THE VANGUARD GROUP, INC. | : | |
| -and- | : | |
| WILLIAM PENN FOUNDATION | : | |
| -and- | : | |
| CITY OF PHILADELPHIA | : | |
| -and- | : | |
| BALLARD SPAHR LLP | : | |
| -and- | : | |
| GELLERT SCALI BUSENKELL | : | |
| & BROWN LLC | : | |
| -and- | : | |
| OFFICE OF DISCIPLINARY COUNSEL | : | : |
| -and- | : | |
| EDWARD BREEN | : | |
| -and- | : | |
| ANDREW LIVERIS | : | |
| -and- | : | |
| RAJIV GUPTA | : | |
| -and- | : | |
| ANDREAS FIBIG | : | |
| -and- | : | |

DAVID H. LONG                                              :
                         -and-                            :
TIMOTHY BUCKLEY                                            :
                         -and-                            :
JANET HAAS, M.D.                                          :
                         -and-                            :
JAMES KENNEY                                              :
                         -and-                            :
MARCEL S. PRATT, ESQUIRE                                  :
                         -and-                            :
DIANA CORTES, ESQUIRE                                    :
                         -and-                            :
MARISSA O'CONNELL, ESQUIRE                               :
                         -and-                            :
BRIAN R. CULLIN, ESQUIRE                                 :
                         -and-                            :
GARY F. SEITZ, ESQUIRE                                   :
                         -and-                            :
THOMAS J. FARRELL, ESQUIRE                               :
                         -and-                            :
RICHARD HERNANDEZ, ESQUIRE                               :
                         -and-                            :
JOSHUA ROBERTS                                            :
                         -and-                            :
DANIEL ANDERS                                             :
                         -and-                            :
JOHN DOE NOS. 1-15                                        :
                                                          :
                  Defendants                              :

## CIVIL ACTION

## PARTIES

1.      Plaintiff, Richard J. Silverberg, is an individual with a principal address in

Philadelphia, Pennsylvania.

2.      Defendant, DuPont de Nemours, Inc. (DuPont), is a Delaware corporation with a

principal place of business in Wilmington, DE.

3.      Defendant, Dow, Inc. (Dow), is a Delaware corporation with a principal place of business in Midland, MI.

4.      Defendant, Corteva, Inc. (Corteva), is a Delaware corporation with a principal place of business in Indianapolis, IN.

5.      Defendant, International Flavors & Fragrances, Inc. (IFF), is a New York corporation with a principal place of business in New York, NY.

6.      Defendant, Avantor, Inc. (Avantor), is a Delaware corporation with a principal place of business in Radnor, PA.

7.      Defendant, Liberty Mutual Group, Inc. (Liberty Mutual), is a manufacturer and provider of insurance products and services and/or owns/holds companies that provide such products/services, including Liberty Life Assurance Company of Boston (Liberty Life) prior to its sale to Lincoln Financial Group, with a principal place of business in Boston, MA.[1][2]

8.      Defendant, The Vanguard Group, Inc. (Vanguard), is a manufacturer and provider of financial products and services with a principal place of business in Malvern, PA.

9.      Defendant, William Penn Foundation (William Penn), is a private nonprofit charitable organization with a principal place of business in Philadelphia, PA.

---

[1] On August 15, 2023, Liberty Mutual Group, Inc. filed a Corporate Disclosure Statement (CDS) pursuant to Federal Rule of Civil Procedure 7.1(a)(1).  Pursuant to the CDS, Liberty Mutual Holding Company, Inc. owns 100% of the stock of LMHC Massachusetts Holdings, Inc., and LMHC Massachusetts Holdings, Inc. owns 100% of the stock of Liberty Mutual Group, Inc.
[2] For purposes of the instant Civil Action, all references to Liberty Life should be treated as references to Liberty Mutual.

10.     Defendant, City of Philadelphia (City), is a municipal corporation with a principal place of business in Philadelphia, PA.

11.     Defendant, Ballard Spahr LLP, is a duly organized law firm with a principal place of business in Philadelphia, PA.

12.     Defendant, Gellert Scali Busenkell & Brown LLC (Gellert Scali), is a duly organized law firm with a principal place of business in Philadelphia, PA.

13.     Defendant, Office of Disciplinary Counsel, is an administrative agency with a principal place of business in Philadelphia, PA.

14.     Defendant, Edward Breen, is an individual with a principal address in Wilmington, DE.

15.     Defendant, Andrew Liveris, is an individual with a principal address in Newark, CA.

16.     Defendant, Rajiv Gupta, is an individual with a principal address in Radnor, PA.

17.     Defendant, Andreas Fibig, is an individual with a principal address in New York, NY.

18.     Defendant, David H. Long, is an individual with a principal address in Boston, MA.

19.     Defendant, Timothy Buckley, is an individual with a principal address in Malvern, PA.

20.     Defendant, Janet Haas, M.D., is an individual with a principal address in Philadelphia, PA.

4

21.     Defendant, James Kenney, is an individual with a principal address in Philadelphia, PA.

22.     Defendant, Marcel S. Pratt, Esquire, is an individual with a principal address in Philadelphia, PA.

23.     Defendant, Diana Cortes, Esquire, is an individual with a principal address in Philadelphia, PA.

24.     Defendant, Marissa O'Connell, Esquire, is an individual with a principal address in Philadelphia, PA.

25.     Defendant, Brian R. Cullin, Esquire, is an individual with a principal address in Philadelphia, PA.[3]

26.     Defendant, Gary F. Seitz, Esquire, is an individual with a principal address in Philadelphia, PA.

27.     Defendant, Thomas J. Farrell, Esquire, is an individual with a principal address in Harrisburg, PA.

28.     Defendant, Richard Hernandez, Esquire, is an individual with a principal address in Philadelphia, PA.

29.     Defendant, Joshua Roberts, is an individual with a principal address in Philadelphia, PA.

---

[3] For purposes of the instant Civil Action, unless otherwise stated, references to the "City" or "City Defendants" are to defendants City, Kenney, Pratt, Cortes, O'Connell, and Cullin.

5

30.     Defendant, Daniel Anders, is an individual with a principal address in Philadelphia, PA.

31.     Defendants, John Doe Nos. 1-15, are officers, directors, executives, managers, administrators, attorneys, employees, and/or other representatives of the corporate defendants, the City, William Penn, Office of Disciplinary Counsel, and/or defendant law firms.

32.     At all times relevant and material hereto, plaintiff was a licensed attorney, the former sole principal at Richard J. Silverberg & Associates, P.C., a law firm, and a former member of ELS Realco LLC (ELS), a former Delaware multi-member limited liability company.

33.     At all times relevant and material hereto, defendant Office of Disciplinary Counsel (ODC) was an administrative agency charged with enforcement of the Pennsylvania Rules of Professional Conduct (RPC).[4]

34.     At all times relevant and material hereto, defendant Farrell was Chief Disciplinary Counsel, ODC, was the highest-ranking policy-making official at the ODC, had supervisory authority for defendant Hernandez, and authorized, ratified, and/or filed the Petition for Discipline addressed to plaintiff.

35.     At all times relevant and material hereto, defendant Hernandez was Disciplinary Counsel (DC), ODC, and filed the Petition for Discipline addressed to plaintiff.[5]  Further, at all times relevant and material hereto, all actions by defendant Hernandez have been at the specific

---

[4] Unless otherwise stated, for purposes of the instant Complaint, the actions of the Office of Disciplinary Counsel and Disciplinary Counsel are treated as one in the same.
[5] *See note 4*, *supra*.

direction and insistence of defendant Farrell, and/or otherwise were authorized/ratified by defendant Farrell and the ODC for purposes of proxy war.

36.     At all times relevant and material hereto, defendant Roberts held the position title of judge, Court of Common Pleas, Philadelphia County.

37.     At all times relevant and material hereto, defendant Anders held the position title of judge, Court of Common Pleas, Philadelphia County.[6]

38.     At all times relevant and material hereto, unless otherwise stated herein, the individual defendants acted within the course and scope of their employment and in furtherance of their respective employers' business and interests.  Alternatively, the individual defendants acted solely in their individual capacities.  To the extent that an agency relationship existed or may have existed between any of the entities or persons identified herein, or it is determined that an agency relationship existed, the entities/persons acted outside the scope of and/or exceeded said agency.

### JURISDICTION AND VENUE

39.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that plaintiff has brought the instant Civil Action pursuant to, *inter alia*, 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.  Supplemental jurisdiction over plaintiff's state law claims is pursuant to 28 U.S.C. § 1367.

---

[6] The position/position titles of certain defendants may not be stated with complete precision.

40.     Venue properly lies in the United States District Court for the Eastern District of Pennsylvania since the alleged violations of plaintiff's federal and state law rights occurred within the geographical boundaries of the Eastern District of Pennsylvania.


## FACTUAL ALLEGATIONS

### Silverberg v. DuPont (SIII)

41.     Plaintiff incorporates, by reference thereto, the Amended Complaint in the matter of *Silverberg v. DuPont de Nemours, Inc.*, No. 23-1868 (E.D.Pa.  May 17, 2023)("Silverberg III" or "SIII"), as though fully set forth herein.[7]


### The Proxy War

42.     On or about April 22, 2016, plaintiff sent an email to counsel for certain defendants in connection with a prior litigation in which they and/or their affiliates were parties including, among others, defendants Dow, DuPont, Corteva, and Liberty Mutual, which stated in pertinent part:

---

[7] On September 25, 2023, plaintiff filed an Amended Complaint.

> It seems like a good time to let you and others know that I will
> soon be completing my book concerning the Jackson odyssey.[8] As
> I expected, this project has generated great interest since the cases
> are a window into a complex and disturbing aspect of corporate
> America, the conduct of corporate officials and corporate counsel,
> and our broken justice system. While the book examines the
> underlying conduct it also explores the business judgment, legal
> and strategic decisions, individual actions, and judicial proceedings
> that cumulatively led to and killed-off multiple causes of action.

43.     The purpose of the April 2016 email was to offer the parties the opportunity to

acquire the publishing rights/intellectual property in advance of the anticipated completion of the

book, but there was no response to plaintiff's overture.

44.     On August 15, 2016, March 6, 2017, and October 23, 2017, plaintiff sent three

follow-up emails but again received no (formal) response.

45.     The response to the April 22, 2016 email (and follow-up emails) was both a

culmination and coalescence of multiple events, interests, risks/exposures, and the collective

effort of the individuals/entities associated with them.

46.     Upon information and belief, the April 22, 2016 email and follow-up emails led

certain individual defendants and/or the companies/organizations with which they were/are

affiliated, including defendants Gupta, Breen, Liveris, Long, Haas, and/or others, either directly

and/or by and through their representatives, associates, affiliates, and/or others (hereinafter the

---

[8] The "Jackson odyssey" referred to a series of fraud and racketeering cases that Mark Jackson, a
former Rohm and Haas Company (R&H) employee, had brought against R&H, Liberty Mutual,
and others, in both Pennsylvania state and federal courts.  *See gen'lly Mark A. Jackson v. Rohm
& Haas Company et al.*, Philadelphia Court of Common Pleas, June Term 1999, No. 1906; *Mark
A. Jackson v. June McCrory*, Philadelphia Court of Common Pleas, June Term 1999, No. 3824.
*See also Mark Jackson v. Rohm and Haas Company*, United States District Court for the Eastern
District of Pennsylvania, Nos. 03-5299, 05-4988, and 06-3682.

"Core Defendants") to determine that action needed to be taken and to formulate a strategy concerning precisely what that action should be.[9]  Further, because those actions required that decisions be made by and/or on behalf of certain companies, organizations and/or entities, as well as the deployment of company resources, such actions only could have been (and actually were) authorized/ratified at the policy-making level; in other words, by the Core Defendants themselves and/or their authorized representatives.[10]

47.     In an effort to deter, dissuade, discourage, and/or prevent publication of the anticipated book, any account by plaintiff of the subject matter of the book, and/or any related claims in connection with defendants' wrongful/unlawful activities, the Core Defendants determined to take a series of wrongful/unlawful actions against plaintiff and ELS Realco LLC (a limited liability company (LLC) with which he was affiliated), and to do so by and through the City of Philadelphia and its lawyers.  In effect, the Core Defendants determined to engage in an illegitimate "proxy war" whereby the actions of the City and/or others were at the direction, on behalf, and/or for the benefit of all defendants, and/or otherwise were either authorized and/or ratified by them.

---

[9] The Core Defendants are comprised of those whose actions were the subject of the emails and which generally are described in the SIII Amended Complaint under the heading "The Reasons for the Proxy War," as well as those who believed their professional/personal interests and concerns (and/or those of their affiliates) would be adversely affected by the anticipated book, any account by plaintiff of the subject matter of the book, and/or any events/claims related thereto.

[10] Further, the actions of the individual defendants/leaders were so extreme, and so contrary to the policies, practices, and interests of the companies/organizations (and their respective stakeholders) with which they were/are affiliated, they only could have occurred and/or been authorized/ratified at the policy-making level.

48.     The determination to engage in a proxy war - which primarily consisted of activities in connection with the filing/pursuit of the tax/PUFTA matters[11] - reflected the Core Defendants' recognition of and fear concerning the true extent of their wrongful/unlawful actions, the related risks/exposures, and of the consequences of the entire pattern of conduct being revealed and explained in a meaningful way to shareholders, stakeholders, regulators, lawmakers, law enforcement, market participants, both the for-profit and non-profit communities, and the public at large.

49.     Upon information and belief, the various actions of the Core Defendants, and how those actions reflected upon the companies/organizations with which they were/are affiliated, were a substantial motivating factor in the decision to both undertake and pursue the proxy war. Further, those same companies/organizations have participated in (either directly or indirectly) and/or have influenced the Core Defendants' actions concerning the proxy war.

50.     Upon information and belief, a combination of factors including certain pre-existing professional and/or personal relationships, as well as certain incentives, led the Core Defendants to engage the City/City officials, Gellert Scali, and/or others for purposes of executing the proxy war.[12]

51.     The determination to engage the City and Gellert Scali to execute the proxy war was central to the Core Defendants' overall strategy that any action(s) be carried out by a third

---

[11] *See City of Philadelphia v. Richard J. Silverberg & Assoc., et al*., Philadelphia Court of Common Pleas, March Term 2008, No. 1510 (the "tax" case); *City of Philadelphia v. ELS Realco LLC, et al*., Philadelphia Court of Common Pleas, September Term 2019, No. 3805 (the "PUFTA" case).

[12] As described herein, the Core Defendants also engaged Vanguard for purposes of restricting plaintiff's IRA and defendants Gellert Scali/Seitz in connection with the Petition for Appointment of Sequestrator.

party(s) with the authority/ability to carry out such actions, that the actions be "defensible" even if they actually were wrongful/unlawful, and that the Core Defendants/other defendants not be directly involved in any such actions (except those who actually executed the proxy war).

52.     Under the guise of seeking to recover past due taxes that supposedly were due and owing, the City filed/pursued two lawsuits against plaintiff for reasons having nothing to do with taxes or the City more generally, which not only was (among other things) a use of legal process/proceedings for wrongful/unlawful purposes, fraudulent, an abuse of process, and a breach of fiduciary duty, but also was directly contrary to the City's own legal and pecuniary interests and those of taxpayers.

53.     Accordingly, in or around June 2017, nearly nine years after the City had abandoned the matter but only three months after plaintiff's March 2017 email concerning his anticipated book, the City engaged in a "renewed" collection/enforcement effort in connection with the June 2008 judgment in the original tax case.

54.     Since that time, the City has filed/pursued the PUFTA claim, engaged in various tax-related litigation activities, including numerous execution/enforcement actions, but repeatedly has failed/refused to actually recover the funds the City has claimed are due and owing despite the legal ability (and repeated opportunities) to do so.[13]

55.     The City's various actions have revealed the City has not filed/pursued the tax/PUFTA matters for purposes of actually recovering past due taxes that supposedly are due and owing, but rather for purposes of the proxy war, specifically: a) to harass, intimidate,

---

[13] Had the City actually recovered the funds and satisfied its claims/judgments, the Core Defendants/City would not have been able (to continue) to use the tax/PUFTA matters for purposes of the proxy war.

oppress, coerce, threaten, instill fear, and retaliate against plaintiff in connection with his anticipated book, any account by plaintiff of the subject matter of the book, and/or any related claims in connection with defendants' wrongful/unlawful activities; and b) to retaliate against plaintiff for engaging in protected activity.

56.    A primary purpose of filing/pursuing the tax/PUFTA matters, and of the proxy war itself, simply has been to entangle plaintiff in baseless litigation, which has served multiple strategic/tactical purposes, all of which have constituted multiple legal, administrative, ethical and/or fiduciary violations.

57.    Central to the Core Defendants' strategy was to ensure that those executing the proxy war had a "colorable" defense for their actions.  For example, but not by way of limitation: a) the City has claimed that it merely has been seeking to recover past due taxes that were due and owing; b) Vanguard has claimed that it merely was responding to a Writ of Execution that had been served upon it; and c) defendants Gellert Scali and Seitz have claimed they merely were carrying out the functions of a Sequestrator.  In fact, all defendants engaged in Constitutional violations and/or conduct of an enterprise through a pattern of racketeering activity, a RICO conspiracy, and either organized and/or participated in executing the proxy war.

58.    As described in SIII and herein, all actions taken by the Core Defendants, the City, its lawyers, Gellert Scali, and defendants Cullin, Anders, Roberts, ODC, Farrell, Hernandez and/or others as part of the proxy war were on behalf (and for the benefit) of all defendants, and were either authorized and/or ratified by them.

**The Petition for Discipline**

59.     On or about March 24, 2022, plaintiff received via email a 39-page letter from defendant Hernandez informing plaintiff that Disciplinary Complaints had been filed against plaintiff.[14]  In short, the DC alleged that plaintiff's actions in connection with the tax/PUFTA matters had violated the RPC and requested a response.  The letter also informed plaintiff that the Complaints had been filed by defendants Anders and Cullin.

60.     On or about April 6, 2022, plaintiff submitted via email a 21-page response to defendant Hernandez which stated, in pertinent part:  a) plaintiff had not violated the RPC; b) plaintiff's allegations, claims, and statements in the tax/PUFTA matters (as well as SI/SII) are based upon plaintiff's knowledge, information, and/or belief, are properly supported by the facts/record and/or inferences reasonably drawn therefrom, and otherwise comply with relevant legal and ethical standards; and c) the City had not filed/pursued the tax/PUFTA matters in order to recover on its claims but rather for purposes of the proxy war, which has included the filing of baseless Complaints with the Disciplinary Board of the Supreme Court of Pennsylvania.

61.     During the ensuing months, plaintiff sent additional letters/emails to defendant Hernandez providing additional information and further explaining the wrongful/unlawful actions of the City and defendant Roberts in connection with the tax/PUFTA matters, as well as plaintiff's response to those actions.

62.     Plaintiff received no response to the letter/response of April 6, 2022 or to any of the follow-up letters/emails to defendant Hernandez.

---

[14] Unless otherwise stated, for purposes of the instant Complaint, the actions of the ODC and DC are treated as one in the same, and references to the ODC and DC are used interchangeably.

63.    On or about December 19, 2023, nearly 2 years after plaintiff received the March 24, 2022 letter from defendant Hernandez, plaintiff was personally served with a 65-page Petition for Discipline (the "Petition").[15]  The Petition was filed by defendant Hernandez (as Disciplinary Counsel) on behalf of defendant Farrell (as Chief Disciplinary Counsel).

64.    The Petition primarily is based upon events occurring from 2019-2021 in the tax/PUFTA matters, but also includes allegations in connection with SI and SII.[16]  While the Petition generally alleges that plaintiff violated the RPC, the ODC/DC failed/refused to identify specific actions by plaintiff that purportedly violated specific provisions of the RPC.

65.    All of plaintiff's allegations/claims in connection with the tax/PUFTA matters, as well as SI-SIII, are based upon plaintiff's knowledge, information, and/or belief, properly supported by the record and/or inferences reasonably drawn therefrom, and otherwise comply with relevant standards.  Further, the conduct being challenged by the ODC/DC is the subject of and/or encompassed by SIII, and therefore, any factual determinations are to be made by the district court and jury and not the ODC/DC based upon whatever investigation and standards they may have applied.

66.    The ODC/DC's allegations/claims against plaintiff are false and a pretext for the true reason(s) the Petition was filed - to advance and protect the interests of the City and Judge Roberts, the SIII defendants more generally, and/or otherwise to facilitate the proxy war.

_____

[15] The Petition was filed on December 6, 2023.

[16] *See Silverberg v. City of Philadelphia, et al.,* United States District Court for the Eastern District of Pennsylvania, No. 19-2691 (as amended September 3, 2019)("Silverberg I" or "SI"); *ELS Realco LLC, et al. v. City of Philadelphia, et. al.,* United States District Court for the Eastern District of Pennsylvania, No. 5034 (filed Oct. 12, 2020)("Silverberg II" or "SII").

**The Disciplinary Complaints**

67.     In the March 24, 2022 letter, the DC informed plaintiff that the Disciplinary Complaints leading to the Petition had been filed by defendants Anders and Cullin.

68.     Plaintiff engaged in no violations of the RPC, including in proceedings involving defendants Anders and Cullin, nor does the Petition identify any specific violations of the RPC by plaintiff.[17]

69.     Accordingly, defendants Anders and Cullin did not file Disciplinary Complaints based upon a legitimate, good faith belief or evidence that plaintiff violated the RPC, but rather for purposes of the proxy war.  In so doing, defendants Anders and Cullin themselves violated the RPC by submitting knowingly false/frivolous Disciplinary Complaints, and/or doing so for knowingly improper/wrongful purposes.


**The Petition for Discipline is Pre-empted by SIII**

70.     The Petition generally addresses the same subject matter as SIII, including the same and/or substantially the same factual/legal questions, and/or is encompassed by them.

71.     Where, as here, an administrative agency files a Petition concerning matters that are the subject of a plaintiff/respondent's federal claims/lawsuit, and there are genuine issues of material fact, the administrative proceedings are pre-empted.

---

[17] Defendant Anders was not a participant, and otherwise had no first-hand knowledge, concerning nearly all of the events identified in the Petition, and no violations of the RPC occurred in those events in which he was a participant.

72.     By filing/pursuing a Petition they knew and/or should have known was legally pre-empted by SIII, the ODC/DC effectively admitted they were utilizing administrative process/proceedings for a knowingly wrongful/unlawful purpose(s), but still determined to do so for purposes of facilitating the illegitimate proxy war.

**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 1**
**The Tax/PUFTA Matters are a Sham**

73.     The term "sham" applies to a case or series of cases where the plaintiff is indifferent to the outcome of the litigation, and instead seeks to impose a collateral harm on the defendant.  Sham litigation does not involve a bona fide grievance, and therefore does not come within the First Amendment right to petition.

74.     The First Amendment interests associated with private litigation (e.g., compensation for violated rights and interests, the psychological benefits of vindication, and the public airing of disputed facts) are not advanced when the litigation is based on intentional falsehoods or on knowingly frivolous claims.[18]

75.     Here, the tax/PUFTA matters were objectively (and obviously) baseless - the City did not file/pursue the cases in order to recover on its claims/judgments, and repeatedly failed/refused to do so.  Therefore, the City was indifferent to the outcome on the merits and/or had decided to sue primarily for the benefit of collateral injuries inflicted through the use of legal

_____

[18] As set forth in the SIII Amended Complaint, the PUFTA Complaint alleged, among other things, that plaintiff was the "sole member of Defendant LLC" and "transferred monies to [ELS] with actual intent to hinder, delay and/or defraud" the City, allegations/claims that were either knowingly false or made in reckless disregard for whether they were true or false.

process/proceedings.[19]  In  particular, but not by way of limitation, the City's actions in connection with the Vanguard Writ alone (which should have resulted in satisfaction of the City's claims/judgments and termination of the tax/PUFTA matters in October 2019) demonstrated both the City's indifference to its own interests and intent to harm plaintiff.

76.     A defendant cannot commit legal or ethical violations defending himself where the plaintiff's claims/lawsuit are illegitimate, do not constitute a bona fide grievance, and are not protected by the petition clause of the First Amendment.  Otherwise, a plaintiff with an improper motive would be permitted to engage in wrongful/unlawful conduct for the specific purpose of forcing and/or attempting to force a defendant to commit legal/ethical violations in an effort to defend himself against the illegitimate action which, among other things, is antithetical to the rule of law and a violation of public policy.

**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 2**
**The City Admitted that it Did Not File/Pursue the Tax/PUFTA**
**Matters for Purposes of Recovering on its Claims/Judgments**

77.     At a hearing conducted on July 7, 2021, defendant Cullin explained the City's reason(s) for "dissolv[ing]" the Vanguard Writ:

---

[19] As described in the SIII Amended Complaint, the City lacked probable cause to file the PUFTA claim, which was time-barred by more than four years and based upon knowingly false and/or reckless allegations/claims.

> [T]he City dissolved the [Vanguard Writ] because we have
> alternate avenues in which to collect this money. And it was a
> strategic decision to pursue a sheriff sale that is quicker, easier.
> Again, a strategic decision made by the City. Mr. Silverberg
> doesn't get to choose how the City collects its money. That's the
> plaintiff's decision to make, not Mr. Silverberg's.

78.     Defendant Cullin's statements that it was a "strategic decision" to "dissolve" the

Writ, and to do so "because [the City had] alternate avenues in which to collect this money,"

effectively admitted that the City was executing a "strategy" whereby its goal/objective was to

encumber but not actually obtain plaintiff's funds.  Accordingly, defendant Cullin admitted that

execution/enforcement proceedings in the PUFTA matter were not for purposes of actually

obtaining funds the City claimed were due and owing; otherwise, the Vanguard account would

have been levied, the City's claims/judgments satisfied, and the tax/PUFTA matters terminated.

79.     Defendant Cullin's statement that plaintiff "doesn't get to choose how the City

collects its money. That's the plaintiff's decision to make," further admitted it was a deliberate

decision to encumber but not to levy the Vanguard account.

80.     Because the Vanguard account contained sufficient funds to satisfy the City's

claims/judgments, the Vanguard Writ undercut further pursuit of the tax matter and the filing of

the PUFTA Complaint altogether - within 24 hours of filing, the City had the legal ability to

recover the full amount it was seeking.  Therefore, further pursuit of the tax/PUFTA matters only

could have been for reasons other than recovery of taxes and/or to satisfy the City's

claims/judgments, and in fact, was for purposes of the proxy war.[20]

---

[20] Had the City levied the Vanguard account and satisfied its claims/judgments, the SIII
defendants would not have been able to continue to utilize the tax/PUFTA matters for purposes
of the proxy war.

**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 3**
**<u>The Petition Does Not Identify Specific Violations of the RPC by Plaintiff</u>**

81.    While the Petition provides a detailed account of the procedural history, the DC summarily concluded that plaintiff violated the RPC without ever identifying an actual violation.

82.    The DC failed/refused to: a) identify which specific action(s) by plaintiff purportedly violated which specific provision(s) of the RPC; b) explain how plaintiff supposedly violated the Rules; and c) provide citations/annotations linking specific actions by plaintiff to specific violations.[21]

83.    The failure/refusal to identify any specific violations of the RPC by plaintiff demonstrates that the ODC/DC did not conduct a proper/legitimate investigation, ignored the actual results of any such investigation, and/or simply determined to move forward with a Petition regardless of (the results of) any investigation.

84.    The determination to move forward with a Petition for Discipline that does not identify specific actions that purportedly violated the RPC demonstrates the disciplinary process/proceedings are a sham, and that the true purpose of the Petition is to facilitate the illegitimate proxy war.

---

[21] Among other things, the DC's failure to specifically identify violations and/or explain/justify his position has prevented plaintiff from challenging any purported violation(s).

**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 4**
**There is No Foundation for the Primary Allegations/Claims**

85.     Although plaintiff was informed that Disciplinary Complaints had been filed by defendants Cullin and Anders, a primary focus of the Petition pertains to certain allegations, claims, and/or statements by plaintiff in connection with defendant Roberts, which the DC has characterized as knowingly false/reckless, frivolous, and/or unsupported by the record.[22]  The DC also made the same allegations/claims in connection with letters plaintiff sent to the Hon. Max Baer, Chief Justice, Supreme Court of Pennsylvania, and the Hon. Idee Fox, President Judge, Court of Common Pleas of Philadelphia County.[23]/[24]

86.     There is no foundation or basis for the DC's allegations/claims, which themselves are unsupported by and/or directly contrary to the actual record.  In particular, the DC simply ignored exculpatory (with respect to plaintiff) and inculpatory (with respect to defendants City, Anders, and Roberts, among others) evidence that should have foreclosed any Petition addressed to plaintiff, and instead led to an investigation of defendants Cullin, Anders and Roberts, among others.

87.     As set forth in plaintiff's letter of July 19, 2021 to Justice Baer and Judge Fox, at some point inexplicable decisions - decisions that consistently are contrary to the facts, prevailing legal standards, and/or consistently favor one party regardless of the facts/standards -

---

[22] The DC provided no evidence concerning plaintiff's intent, which is central to such allegations/claims.

[23] Plaintiff sent detailed letters to Justice Baer and Judge Fox for purposes of, among other things, notifying them of the wrongful/unlawful actions occurring in the tax/PUFTA matters, including the conduct of Judge Roberts, and to request an investigation.

[24] The letters to Justice Baer and Judge Fox were, in substantial part, addressed to them in their administrative capacities.  For example, in a letter dated August 8, 2021, plaintiff stated, "I am again calling upon the Chief Justice as the head of the AOPC and the President Judge to take immediate corrective actions, including but not limited to, the immediate removal of Judge Roberts from these proceedings and a stay of the proceedings pending an investigation."

are not merely a mistake, inadvertence, or an exercise of discretion, but rather are part of a

pattern of wrongful/unlawful conduct/misconduct.  However, not only has Judge Roberts not

been held accountable, the ODC/DC filed a Petition against plaintiff, in part, for reporting Judge

Roberts' wrongful/unlawful conduct.

88.     There is no violation of the RPC where, as here, a party or counsel makes true

statements, whether contained in a legal filing, letter, or other communication, nor is there a

violation when a party or counsel identifies and reports misconduct.  Even if it ultimately is

determined that the threshold for misconduct has not been met, it still does not mean that the

complaining party's allegations were knowingly false/reckless, frivolous, and/or unsupported by

the record.  Further, all of the challenged allegations, claims, and statements, including those in

the letters to Justice Baer, Judge Fox, and Judge Roberts, are subject to (and protected by)

judicial privilege.

**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 5**
**The Disciplinary Complaints/Petition Cannot be Reconciled with**
**the Actions of Defendants Cullin, Anders, and Roberts in SII/SIII**

89.     Although defendants Cullin, Anders, and Roberts were/are defendants in SII/SIII,

and although SII/SIII are predicated upon the same and/or substantially similar allegations/

claims as the Petition, none filed a Rule 11 Motion and/or claimed that plaintiff's allegations/

claims in SII/SIII are knowingly false/reckless and/or frivolous.

90.    Of the 36 defendants in SII/SIII combined,[25] none characterized plaintiff's allegations/claims as knowingly false/reckless and/or frivolous, only the City filed a Rule 11 Motion (in SII),[26] and the district court never made any such determination.

91.    Where a defendant declines to file a Rule 11 Motion, the defendant implicitly acknowledges that the allegations/claims are "nonfrivolous."

92.    In fact, the only person claiming that plaintiff has fabricated his case/claims, violated the RPC, and should be disciplined is the DC - a person who was not a participant and who has no direct knowledge concerning the underlying events.

93.    Where the DC takes a position(s) that is contrary to and/or inconsistent with the position(s) taken by the subject(s) of the Petition (i.e., defendants City, Anders, and Roberts), the Petition has not been filed/pursued in good faith and/or for a proper purpose.

94.    The failure/refusal by defendants to file Rule 11 Motions in SII/SIII confirms that the Disciplinary Complaints are not based upon a genuine, good faith belief or evidence that plaintiff's actions violated the RPC.  Further, since the district court already determined (on a significantly less-developed record) that plaintiff has stated claims that the City's "tax collection activities" violated plaintiff's speech and due process rights,[27] it is likely that any Rule 11 Motion would have been futile if not frivolous.

---

[25] Certain parties are defendants in both cases.

[26] The City's Motion was addressed to the SII Amended Complaint.  The City did not argue that plaintiff's allegations/claims were knowingly false/frivolous, and did not challenge the core allegations contained in the SII Amended Complaint.  In fact, the City's argument on the merits was largely contained in an unsupported footnote.

[27] On January 8, 2020, the district court dismissed SI without prejudice on jurisdictional grounds, but not before determining the SI Amended Complaint stated claims that "the City Defendants' tax collection activities violated Plaintiff's free speech and due process rights under the First and Fourteenth Amendments, respectively," specifically referencing Count I (Section 1983 -

95.     Accordingly, defendants Cullin and Anders utilized the disciplinary process in an improper effort to obtain remedies administratively that they were unwilling/unable to pursue through the legal process.  Further, the strategic/tactical use of the disciplinary process is especially pernicious because the Disciplinary Complaints are being utilized to facilitate the proxy war - a corrupt scheme or plan to extort, coerce, and intimidate plaintiff in connection with his anticipated book/claims concerning defendants' wrongful/unlawful conduct.


**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 6**
**The Role of Defendant Roberts**

96.     A primary focus of the Petition is plaintiff's allegations/claims in connection with the actions of defendant Roberts, the Court of Common Pleas judge who presided over the relevant proceedings in the tax/PUFTA matters.

97.     However, defendant Roberts did not file a Disciplinary Complaint.  Further, based upon the relevant events in the tax/PUFTA matters and SI-SIII, as well as the substance of the Petition, it is unlikely that defendants Anders and/or Cullin supplied the detailed information concerning plaintiff's interactions with Judge Roberts contained in the Petition, and/or that a customary investigation by the ODC/DC would have revealed such information.

98.     Upon information and belief, based upon the substance the Petition, the ODC/DC and Judge Roberts engaged in a coordinated and/or cooperative effort in connection with the preparation and filing of the Petition, and specifically concerning plaintiff's allegations/claims

---

Violation of Constitutional Rights) and Count VII (Section 1983 - Retaliation).  *See SI, Mem. Op. of Jan. 8, 2020.*

concerning defendant Roberts.  Alternatively, the ODC/DC treated the investigation as if defendant Roberts had filed a Disciplinary Complaint even though he had not done so.

99.     It is not the role of ODC/DC to advocate for a defendant in a legal dispute, to allege in an administrative setting what a defendant himself has failed/refused to allege in a legal setting, to seek to influence or undercut a plaintiff/respondent's legal claims, to run "interference" for judges who are alleged to have engaged in wrongful/unlawful conduct and/or misconduct, to act as de facto jury in cases pending before the district court, and/or otherwise to take positions that are contrary to the actual facts and/or prevailing standards, especially when the administrative agency is legally pre-empted from undertaking the matter in the first instance.

100.     To the extent that ODC/DC and Judge Roberts engaged in a coordinated and/or cooperative effort in connection with the preparation and filing of the Petition, they did not do so based upon a legitimate, good faith belief or evidence that plaintiff violated the RPC, but rather for purposes of facilitating the illegitimate proxy war.

**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 7**
**The ODC/DC did not Properly Consider/Evaluate the Actual Facts**

101.     The March 24, 2022 letter states, in pertinent part:

> It is also important for you to understand that it is the obligation of our office to develop all information relevant to a complaint, including information that may justify or exonerate the alleged actions of the plaintiff-attorney or mitigate the seriousness of the violations that may have occurred.

102.     As described herein, the DC did not "develop all information" relevant to the Complaints(s), including exculpatory information, and/or intentionally ignored such information.

In particular, but not by way of limitation, the ODC/DC failed/refused to properly consider/evaluate, *inter alia*:  a) that the tax/PUFTA matters were not filed/pursued for purposes of recovering past-due taxes that purportedly were due and owing but rather for purposes of the proxy war; b) the true purpose of the City's motions, petitions and other litigation activities (e.g., Motion to Foreclose Upon Lien, Motion to Gain Entry, Petition for Contempt, various discovery matters), which were not filed/pursued for purposes of obtaining the stated remedies but rather to facilitate the proxy war; c) the City's 19-month restriction of plaintiff's Vanguard account, that the account contained sufficient funds to satisfy the City's claims/judgments, and the City's failure/refusal to levy the account; d) plaintiff's offers (in May and July 2021) to pay the full amount the City claimed was due and owing, and the City's rejection of the offers; e) the Petition for Appointment of Sequestrator, which was utilized in an improper, illegitimate effort to forcibly remove plaintiff from his home; and f) that Judge Roberts was aware of and/or facilitated the City's wrongful/unlawful litigation activities, and that Judge Roberts himself engaged in numerous instances of wrongful, unlawful, and/or unethical conduct in connection with the tax/PUFTA matters.[28]

103.    The City's litigation activities primarily consisted of discovery-related matters, yet the City/Vanguard simultaneously had restricted an account containing sufficient funds to satisfy the City's claims/judgments, thereby foreclosing the need for discovery or further proceedings of any kind.  Therefore, during the same time period encompassed by the Petition

---

[28] For example, but not by way of limitation, on October 29, 2021, Judge Roberts signed an Order granting the Sequestrator the authority to "take control" of the Market Street property, a remedy which is not available under Pennsylvania Rule of Civil Procedure 3114 or relevant Pennsylvania law.  Further, on July 23, 2021, Judge Roberts granted the City's Petition for Contempt based upon plaintiff's purported violation of a Rule even though no Rule had been issued, and the City's Petition was based upon purported discovery violations.

(2019-2021), all of the City's litigation activities were wrongful/unlawful - the City intentionally failed/refused to actually obtain the funds to satisfy its claims/judgments.[29]  Yet, the ODC/DC has alleged that plaintiff has engaged in wrongdoing, rather than those who have committed actual legal/ethical violations.

104.    The Petition cannot be reconciled with the stated role/responsibilities of the ODC/DC, and actually represents an abdication by them of those same duties/responsibilities. This further supports the true purpose of the Petition, which was not to address purported violations of the RPC by plaintiff but rather to facilitate the proxy war.


**The Filing and Service of the Petition for Discipline
were Timed to Coincide with Events Occurring in SIII**

105.    Plaintiff was served with the Petition on December 19, 2023, nearly 2 years after plaintiff was notified that Disciplinary Complaints had been filed but only 30 days after plaintiff filed his Response to the SIII defendants' Motions to Dismiss the Amended Complaint.[30] Accordingly, the filing of the Petition was timed to coincide with events in SIII, connected the Petition and the SIII parties' Motions/Responses, and the actions of the ODC/DC and SIII defendants more generally.

106.    The Petition was not filed until the SIII defendants had the opportunity to evaluate the merits of their dismissal motions (in view of plaintiff's Responses), the likelihood that

---

[29] As described herein, the City admitted it was executing a "strategy" whereby its goal/objective was to encumber but not actually obtain plaintiff's funds.

[30] The Petition is based upon events occurring between 2019-2021.  Further, the March 2022 letter and Petition are based upon substantially similar events, which suggests the DC's investigation concluded nearly two years prior to the filing of the Petition.

plaintiff had stated claims, and to determine whether to take additional actions/measures in furtherance of the goals/objectives of the proxy war.

107.    The timing of the Petition was not a serendipitous coincidence, but rather an intentional effort to interfere with SIII, part of the continuing effort to harass, intimidate, coerce, and retaliate against plaintiff in connection with plaintiff's claims against all defendants, and to (continue to) facilitate the proxy war.

108.    Although plaintiff repeatedly has requested that the Petition for Discipline be withdrawn, defendants ODC, Farrell, and Hernandez have failed/refused to do so.

**COUNT I**
**PLAINTIFF V. CITY OF PHILADELPHIA, JAMES KENNEY,**
**MARCEL S. PRATT, ESQUIRE, DIANA P. CORTES, ESQUIRE,**
**MARISSA O'CONNELL, ESQUIRE, BRIAN R. CULLIN, ESQUIRE,**
**GELLERT SCALI BUSENKELL & BROWN LLC, GARY F. SEITZ, ESQUIRE,**
**OFFICE OF DISCIPLINARY COUNSEL, THOMAS FARRELL, ESQUIRE, RICHARD**
**HERNANDEZ, ESQUIRE, JOSHUA ROBERTS, AND DANIEL ANDERS**
**42 U.S.C. § 1983 - VIOLATION OF CONSTITUTIONAL RIGHTS**

109.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred eight (108) as though fully set forth herein.

110.    The conduct of defendants, individually and/or by and through defendants Cullin, Anders, Roberts, Farrell and Hernandez, acting at all times within the course and scope of their employment and in furtherance of their employers' business and interests, constitutes conduct under color of state law and/or official right within the meaning of Section 1983 and which has violated plaintiff's rights to, *inter alia*:  a) free speech/petition as secured by the First

Amendment; and b) due process as secured by the Fourteenth Amendment, all to plaintiff's great detriment and loss.[31]

111.    As described in the SIII Amended Complaint, since at least 2017-present, defendants' various activities in connection with the filing/pursuit of the tax/PUFTA matters have been for purposes of the proxy war - a corrupt plan/scheme by the Core Defendants and/or others on behalf of all defendants whereby the tax/PUFTA matters were utilized to, *inter alia*: a) delay, deter, dissuade, and/or prevent the publication of plaintiff's anticipated book, any account by plaintiff of the subject matter of the book, and/or any related claims in connection with the wrongful/unlawful activities of the Core Defendants, the companies/organizations with which they were/are affiliated, and those other individuals/entities whose wrongful/unlawful conduct is encompassed thereby and/or relevant thereto, and in fact have interfered with such publication, account, and/or claims; and b) retaliate against plaintiff for engaging in protected activity, namely the filing/pursuit of plaintiff's Constitutional, federal statutory, and other claims against defendants.

112.    The Disciplinary Complaints filed by defendants Anders and Cullin were not based upon a legitimate, good faith belief or evidence that plaintiff had violated the RPC, and in fact, did not identify any violations of the RPC, but rather were for the specific purpose of facilitating the proxy war.

113.    The ODC/DC did not conduct a proper/legitimate investigation in connection with the Disciplinary Complaints, which included the failure to properly consider and evaluate the

---

[31] As described herein, the challenged conduct resulted in a loss or deprivation of plaintiff's rights, privileges, and immunities and/or a deprivation of life, liberty, and/or property as secured by the Fourteenth Amendment.

relevant exculpatory and inculpatory evidence, including the actual facts in connection with the City's activities in the tax/PUFTA matters and the reasons for those activities. Had the ODC/DC done so, they would have determined that the tax/PUFTA matters were a sham, did not constitute a bona fide grievance and were not protected by speech/petition clause of the First Amendment, that the City had not filed/pursued the matters in order to recover on its claims but rather to facilitate the proxy war, that plaintiff had engaged in no violation(s) of the RPC, and that it was not possible for plaintiff to do so. Alternatively, any investigation did not establish a violation(s) of the RPC by plaintiff, yet the ODC/DC still filed/pursued the Petition for Discipline anyway.

114.    With respect to the 65-page Petition for Discipline, which purportedly is based upon the Disciplinary Complaints and/or the ODC/DC's investigation, the ODC/DC summarily concluded that plaintiff violated the RPC without ever identifying an actual violation. In particular, but not by way of limitation, the ODC/DC failed/refused to: a) identify which specific actions by plaintiff purportedly violated which specific provisions of the RPC; b) explain how plaintiff supposedly violated the Rules; and c) provide citations/annotations linking specific actions by plaintiff to specific violations. The failure/refusal to identify any specific violations of the RPC by plaintiff demonstrates that the ODC/DC did not conduct a proper/legitimate investigation, ignored the actual results of any such investigation, and/or simply determined to move forward with a Petition regardless of (the results of) any investigation.

115.    While the ODC/DC has characterized certain allegations, claims, and/or statements by plaintiff as knowingly false/reckless, frivolous, and/or unsupported by the record, there is no foundation for ODC/DC's allegations/claims, which themselves are directly contrary

to the record.[32]  Further, but not by way of limitation, the Petition for Discipline is:  a) pre-empted by SIII; c) contrary to, and cannot be reconciled with, the actions/positions of the defendants Cullin, Anders, and Roberts in SII/SIII who did not file Rule 11 Motions and who themselves did not claim (in SI-SIII) that plaintiff's allegations/claims were knowingly false/reckless, frivolous, and/or unsupported by the record.

116.    A primary purpose of the Petition is to (attempt to) defend the actions of the City and Judge Roberts at the same time those same actions are being challenged in district court, to portray the City and Judge Roberts in a positive light and plaintiff in a negative light, and/or otherwise to advocate a position for the City/Judge Roberts in the administrative setting that the City/Judge Roberts themselves are unwilling/unable to advocate in district court, which is not properly within the ODC/DC's purview and/or relevant to their mandate to enforce the RPC.

117.    The filing of knowingly baseless, bad faith Disciplinary Complaints/Petition for Discipline violates the First and Fourteenth Amendments.  In particular, but not by way of limitation:  a) a lawsuit and the claims contained therein are a form of property; b) the allegations/claims as set forth in SI-SIII are an exercise of, and protected by, the speech/petition clauses of the First Amendment; c) plaintiff has a property interest in the intellectual property associated with his anticipated book; d) defendants filed both the Disciplinary Complaints and Petition for Discipline for purposes of interfering with and/or impairing plaintiff's property rights as described herein; e) the allegations/claims as set forth in SI-SIII are an exercise of, and protected by, the speech/petition clauses of the First Amendment; and f) a primary purpose of the Disciplinary Complaints and Petition was/is to delay, deter, dissuade, and/or prevent the

---

[32] The DC provided no evidence concerning plaintiff's intent, which is central to such allegations/claims.

publication of plaintiff's anticipated book, any account by plaintiff of the subject matter of the book, and/or any related claims in connection with defendants' wrongful/unlawful activities, as well as to retaliate against plaintiff for engaging in protected activity, all in violation of plaintiff's Constitutional rights.  Further, defendants filed/pursued the Complaints/Petition without any reasonable justification in the service of a legitimate governmental objective.  In so doing, defendants acted arbitrarily, abused their authority, and engaged in unlawful oppression.

118.    Defendants engage in a policy, practice, and/or custom of utilizing legal and/or administrative process/procedures for wrongful/unlawful purposes, including but not limited to, advancing and protecting the professional, commercial, political, personal, and/or other interests of certain third parties, individuals, their affiliates/affiliated organizations, and/or others.  In particular, but not by way of limitation, although lawyers swear an oath and are duty-bound to follow the RPC, and although the ODC/DC have a mandate to enforce the RPC, defendants violated those same standards in connection with the filing/pursuit of the baseless, bad faith Disciplinary Complaints and Petition for Discipline, which actually were filed/pursued for purposes of executing and/or facilitating the illegitimate proxy war.

119.    As described herein, because the actions defendants in connection with the filing of the Disciplinary Complaints and Petition for Discipline were not based upon a legitimate, good faith belief or evidence that plaintiff had violated the RPC but rather to facilitate the proxy war, the filing/pursuit of the Complaints/ Petition was arbitrary, oppressive, an abuse of power, and/or the exercise of power without any reasonable justification in the service of a legitimate governmental objective, thereby violating plaintiff's Constitutional rights.

120.    For substantially the same reasons the City engaged in Constitutional violations in connection with the filing/pursuit of the tax/PUFTA matters, the actions defendants Cullin,

Anders, Roberts, Farrell, and Hernandez in connection with the Disciplinary Complaints and Petition for Discipline have violated plaintiff's Constitutional rights.

121.    Because defendants Cullin, Anders, Roberts, Farrell, and Hernandez acted on behalf of all defendants, and because said defendants executed this aspect of the proxy war on behalf of the Core Defendants/all defendants, the actions by said defendants are assignable to all defendants, who authorized/ratified the conduct described herein.

122.    As relief, plaintiff demands all legal and equitable remedies for all injuries, harms, damages, and losses suffered as the result of defendants' violations of plaintiff's rights as described herein.  In particular, but not by way of limitation, plaintiff demands, as appropriate, to be made whole including, but not limited to, an award of monetary damages, interest on said funds, and any and all fines, penalties, attorney's fees, interest, and costs.  As further relief, plaintiff demands:  a) an award of compensatory damages for his severe personal injuries as described herein, including but not limited to, damage to and/or loss of personal and professional reputation, severe emotional distress and/or mental anguish with associated physical symptoms, humiliation, anxiety, and stress; b) an award of punitive damages in that defendants' conduct was motivated by an evil motive or intent, and/or was in callous or reckless disregard to the rights of plaintiff and/or others, and/or was intentional and/or reckless, wanton, extreme, and outrageous, and otherwise satisfied the standard of outrageousness necessary to support an award of punitive damages; c) an order enjoining defendants from engaging in similar or like conduct in the future; and d) all fines, penalties, attorney's fees, interest, costs, and all other legal and equitable relief which may be available and the Court deems just and appropriate.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, City of Philadelphia, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel,

James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire,

Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez,

Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of

$150,000, exclusive of interest and costs.

### COUNT II
### PLAINTIFF V. ALL DEFENDANTS
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### <u>INTERFERENCE WITH COMMERCE - 18 U.S.C. §1951</u>

123.     Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One

hundred twenty-two (122) as though fully set forth herein.

124.     The conduct of defendants, both individually and collectively, constitutes a

violation of plaintiff's rights as secured by the Racketeer Influenced and Corrupt Organizations

Act ("RICO"), 18 U.S.C. § 1961 et seq., and in particular but not by way of limitation, 18 U.S.C.

§§ 1962(c), 1951.

125.     The conduct of the defendants, each acting through their employees, associates,

and/or representatives, constitutes conduct of an enterprise through a pattern of racketeering

activity.  In particular, but not by way of limitation:  a) Dupont, Dow, Corteva, IFF, Avantor,

Liberty Mutual, Vanguard, the City, William Penn, Ballard Spahr, Gellert Scali, and ODC

formed a joint association-in-fact or enterprise within the meaning of RICO;[33] b) the activities of

the joint enterprise were operated, managed, and/or otherwise conducted by persons who were

---

[33] Dupont, Dow, Corteva, IFF, Avantor, Liberty Mutual, Vanguard, the City, William Penn, Ballard Spahr, Gellert Scali, and ODC each constitute an association-in-fact or enterprise within the meaning of RICO engaged in, or the activities of which affect, interstate or foreign commerce.

either employed by or associated with said joint enterprise within the meaning of RICO; c) in

addition, Dupont, Dow, Corteva, IFF, Avantor, Liberty Mutual, Vanguard, the City, William

Penn, Ballard Spahr, Gellert Scali, and ODC each conducted their respective enterprises through

the other, and therefore, were "persons" within the meaning of RICO for purposes of doing so;

and d) said persons conducted and/or participated, directly or indirectly, in the joint enterprise's

affairs through a pattern of racketeering activity.  Defendants Breen, Liveris, Gupta, Fibig, Long,

Buckley, Haas, Kenney, Pratt, Cortes, O'Connell, Cullin, Seitz, Farrell, Hernandez, Roberts, and

Anders operated, managed, authorized, and/or administered the joint enterprise, authorized

and/or ratified the corrupt plan or scheme to utilize the Disciplinary Complaints and/or Petition

for Discipline as part of the illegitimate proxy war, as well as any schemes within the overall

scheme, and to do so by knowingly utilizing legal and/or administrative process/proceedings for

wrongful/unlawful purposes.  The joint enterprise comprises an ongoing organization with a

framework for making and carrying out decisions, with members that function as a continuing

unit with established duties, and which is separate, distinct, and apart from the pattern of

racketeering activity in which it engages.

126.     Defendants obstructed, delayed, and/or affected commerce or the movement of an

article or commodity in commerce by extortion, or attempted and/or conspired to do so.

Defendants have endeavored and/or conspired to obtain property from another, with his consent,

induced by wrongful use of actual or threatened force, fear, and/or under color of official right,

in violation of 18 U.S.C. §§ 1951(a), (b).  Defendants have sought to obtain from plaintiff certain

property, and/or threatened/attempted to do so, despite having no legitimate grounds or basis to

do so.  In particular, but not by way of limitation:  a) defendants Anders/Cullin (re: Disciplinary

Complaints) and Farrell/Hernandez (re: Petition for Discipline) filed knowingly baseless

Complaints/Petition with the Disciplinary Board of the Supreme Court of Pennsylvania; b) the Complaints/Petition were not filed based upon a legitimate, good faith belief or evidence that plaintiff had violated the RPC, but rather for purposes of the illegitimate proxy war - a corrupt plan/scheme conceived, organized, and directed by the Core Defendants and/or others and executed by defendants Anders, Cullin, Roberts, Farrell, and Hernandez on behalf (and for the benefit) of all defendants whereby the Complaints/Petition were utilized to unlawfully harass, intimidate, coerce and extort plaintiff, or to attempt to do so, in order to, *inter alia*: a) delay, deter, dissuade, and/or prevent the publication of plaintiff's anticipated book, any account by plaintiff of the subject matter of the book, and/or any related claims in connection with the wrongful/unlawful activities of the Core Defendants, the companies/organizations with which they were/are affiliated, and those other individuals/entities whose wrongful/unlawful conduct is encompassed thereby and/or relevant thereto. The Complaints/Petition specifically were intended to wrongfully/unlawfully impair plaintiff's law license, and were part of the overall effort to harass, intimidate, oppress, coerce, threaten, instill fear, and retaliate against plaintiff in connection with the proxy war.

127.    The repeated obstructive/extortionate acts of defendants, as hereinbefore set forth, were not isolated or sporadic events but rather were all related in that they had the same or similar purposes, participants, victims, results and/or methods of commission, and/or otherwise were related by distinguishing characteristics. Additionally, the actions have continued over a substantial period of time, pose a threat of continuing racketeering activity, and/or are part of defendants' regular way of doing business, all of which has and will continue indefinitely into the future to have an adverse effect upon interstate commerce.

128.    As a direct and proximate result of defendants' pattern of racketeering activity as described herein, plaintiff has suffered an injury to business or property, and otherwise has been legally injured within the meaning of RICO.  In particular, but not by way of limitation, plaintiff has suffered the following damages and losses:  a) the damages and losses described in the SIII Amended Complaint, which are incorporated by reference as though fully set forth herein; b) great expenses, delays, and inconvenience (and/or a substantial increase thereto) in connection with the prosecution of plaintiff's claims and the defense against defendants' actions; c) severe damage to and/or loss of personal and professional reputation; and d) attorney's fees and costs and/or a substantial increase thereto, which were required and expended as a direct and/or proximate result of defendants' racketeering activities.

129.    As relief for defendants' violations of plaintiff's rights as secured by RICO, plaintiff demands all legal, equitable, and/or other remedies available pursuant to RICO for all damages, harms, injuries, and losses suffered, including all losses to business and/or property, for the pattern of racketeering activity.  In particular, but not by way of limitation, plaintiff demands: a) an award of all economic and/or compensatory damages for the losses as hereinbefore set forth; b) punitive, liquidated, and/or treble damages pursuant to 18 U.S.C. § 1964(c); c) an injunction against further violations of plaintiff's rights as secured by the Act; and d) fines, penalties, attorney's fees, interest, costs, and all other legal and equitable relief that may be available and that the Court deems just and appropriate.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of

Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

### COUNT III
### PLAINTIFF V. ALL DEFENDANTS
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### OBSTRUCTION OF JUSTICE - 18 U.S.C. §1512

130.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred twenty-nine (129) as though fully set forth herein.

131.    The conduct of defendants, both individually and collectively, constitutes a violation of plaintiff's rights as secured by the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and in particular but not by way of limitation, 18 U.S.C. §§ 1962(c), 1512(b)-(d).

132.    Defendants knowingly used intimidation, threats, or corruptly persuaded another person, or attempted to do so, or engaged in misleading conduct toward another person, with intent to:  1) corruptly obstruct, influence, or impede an official proceeding, or attempt to do so; and/or 2) intentionally harassed another person and thereby hindered, delayed, prevented, or dissuaded a person from attending or testifying in an official proceeding and/or reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense.

133.    For the same reasons the challenged conduct violates 18 U.S.C. §1951, defendants' actions also violate 18 U.S.C. §1512.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT IV
## PLAINTIFF V. ALL DEFENDANTS
## OBSTRUCTION OF JUSTICE - 18 U.S.C. §1503

134.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred thirty-three (133) as though fully set forth herein.

135.    The conduct of defendants, both individually and collectively, constitutes a violation of plaintiff's rights as secured by the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and in particular but not by way of limitation, 18 U.S.C. §§ 1962(c), 1503.

136.    Defendants corruptly, or by threats or force, or by threatening letter or communication, influenced, obstructed, or impeded, or endeavored to influence, obstruct, or impede, the due administration of justice.

137.    For the same reasons the challenged conduct violates 18 U.S.C. §1951, defendants' actions also violate 18 U.S.C. §1503.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.


### COUNT V
### PLAINTIFF V. ALL DEFENDANTS
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### MAIL/WIRE FRAUD - 18 U.S.C. §§ 1341, 1343

138.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred thirty-seven (137) as though fully set forth herein.

139.    The conduct of defendants, both individually and collectively, constitutes a violation of plaintiff's rights as secured by the Racketeer Influenced and Corrupt Organizations

Act ("RICO"), 18 U.S.C. § 1961 et. seq., and in particular but not by way of limitation, 18

U.S.C. §§ 1341 and 1343 relating to mail and wire fraud.

140.    The fraudulent plan/scheme described herein was predicated upon, carried out,

advanced, furthered and/or concealed by defendants' use of the mails and wires in violation of 18

U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud), including "innocent" mail/wire

communications, in that there were numerous such communications concerning and/or

secondary to defendants' racketeering activity.

141.    As described herein, the proxy war effectively was a fraud/fraud upon the court

whereby the filing/pursuit of the tax/PUFTA matters was not for the purposes stated in the

Complaints but rather to wrongfully/unlawfully deter, dissuade, and/or prevent plaintiff (by

means of harassment, intimidation, threats, instilling fear, and coercion) from moving forward

with his anticipated book, the publication of any account of defendants' wrongdoing, and to

retaliate against plaintiff.  The Disciplinary Complaints and Petition for Discipline were not

filed/pursued based upon a legitimate, good faith belief or evidence that plaintiff had violated the

RPC but rather to facilitate the proxy war, and involved numerous electronic communications

and filings which were part of and/or secondary to the plan/scheme and/or were "innocent"

communications and transmitted via the mails and/or wires, including, *inter alia*:  a) letter of

March 24, 2022 (sent via email) from R. Hernandez to R. Silverberg re: Disciplinary

Complaints; b) Petition for Discipline (electronically filed December 6, 2023); c) letter of

December 28, 2023 from R. Hernandez to R. Silverberg re: extension to respond to Petition (sent

via email); and d) Answer to Petition (electronically filed January 29, 2024).

142.     The mails and wires were used and were necessary to further the plan/scheme to defraud as described herein, were detrimentally relied upon as part of the plan/scheme, and resulted in great damage and loss to plaintiff.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.


### COUNT VI
### PLAINTIFF V. ALL DEFENDANTS
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### CONSPIRACY - 18 U.S.C. § 1962(d)

143.     Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred forty-two (142) as though fully set forth herein.

144.     The conduct of defendants, both individually and collectively, constitutes a violation of plaintiff's rights as secured by the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and in particular but not by way of limitation, 18 U.S.C. § 1962(d).

145.    The conduct of defendants constitutes an agreement or conspiracy to violate RICO within the meaning of 18 U.S.C. § 1962(d).  In particular, but not by way of limitation, in or around April 2016, the Core Defendants formed a conspiracy which ultimately included all defendants.  The purpose of the conspiracy was to wrongfully/unlawfully deter, dissuade, discourage, and/or prevent publication of plaintiff's anticipated book, any account by plaintiff of the subject matter of the book, and/or any related claims in connection with defendants' own wrongful/unlawful activities.  The conspiracy was carried out by/through the City's use of legal process/proceedings for wrongful/unlawful purposes, namely the filing/pursuit of the tax/PUFTA matters, which were not filed/pursued for purposes of actually recovering past due taxes that supposedly are due and owing but rather for purposes of the proxy war, specifically to harass, intimidate, oppress, coerce, threaten, instill fear, extort, and retaliate against plaintiff.

146.    The conspiracy also has been carried out, and furthered, by defendants' wrongful/unlawful utilization of administrative process/proceedings, namely the filing of Disciplinary Complaints and a Petition for Discipline which are not based upon a legitimate, good faith belief or evidence that plaintiff violated the RPC, but rather to facilitate the illegitimate proxy war.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire,

Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders,

jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.


**COUNT VII**
**PLAINTIFF V. CITY OF PHILADELPHIA, JAMES KENNEY,**
**MARCEL S. PRATT, ESQUIRE, DIANA P. CORTES, ESQUIRE,**
**MARISSA O'CONNELL, ESQUIRE, BRIAN R. CULLIN, ESQUIRE,**
**GELLERT SCALI BUSENKELL & BROWN LLC, GARY F. SEITZ, ESQUIRE,**
**OFFICE OF DISCIPLINARY COUNSEL, THOMAS FARRELL, ESQUIRE, RICHARD**
**HERNANDEZ, ESQUIRE, JOSHUA ROBERTS, AND DANIEL ANDERS**
**42 U.S.C. § 1983 - RETALIATION**

147.     Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One

hundred forty-six (146) as though fully set forth herein.

148.     Plaintiff engaged in protected activity within the meaning of Section 1983 and the

United States Constitution, defendants took a series of adverse actions against plaintiff, and there

is casual link between the protected activity and the adverse actions.  In particular, but not by

way of limitation, and as described herein:  a) on June 20, 2019, plaintiff filed the Complaint in

SI, which was served on August 13, 2019; b) on October 12, 2020, plaintiff filed the Complaint

in SII; c) on May 17, 2023, plaintiff filed the SIII Complaint; d) on September 25, 2023, plaintiff

filed the SIII Amended Complaint; e) as the result of plaintiff's Complaints, both individually

and/or collectively, and which alleged violations of plaintiff's Constitutional, federal statutory,

and other rights, defendants took a series of adverse actions against plaintiff, namely the various

actions described herein in connection with the filing/pursuit of the Disciplinary Complaints and

Petition for Discipline; and f) there is a causal link between plaintiff's exercise of his rights and

the adverse actions.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, City of Philadelphia, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT VIII
## PLAINTIFF V. ALL DEFENDANTS
## <u>ABUSE OF PROCESS</u>

149.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred forty-seven (148) as though fully set forth herein.

150.    The conduct of defendants constituted an abuse or a perversion of legal and/or administrative process.  The conduct of defendants in connection with the improper, illegitimate filing/pursuit of the Disciplinary Complaints and Petition for Discipline constitutes a perversion of the process/proceedings, that is, the use of legal/administrative process and proceedings primarily to accomplish a purpose for which the process/proceedings were not designed, a wrongful/unlawful purpose designed to obtain an illegitimate and unlawful result, all of which caused damage and harm to plaintiff.

151.    For the same reasons the challenged conduct violates Section 1983, RICO (§1962(c)), and RICO (§1962(d)), defendants' actions also constitute an abuse of process.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc.,

Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT IX
## PLAINTIFF V. ALL DEFENDANTS
## FRAUD

152.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred fifty-one (151) as though fully set forth herein.

153.    Defendants intentionally made a series of false and/or fraudulent misrepresentations and/or omissions, knowing such misrepresentations/omissions were false and/or in reckless disregard for whether they were true or false, which were material to the transaction at hand, with the intent to mislead another to rely on them, which were justifiably relied upon by plaintiff and/or others, and which resulted in damage or harm to plaintiff proximately caused by the reliance.

154.    For the same reasons the challenged conduct violates Section 1983, RICO (§1962(c)), RICO (§1962(d)), and constitutes an abuse of process, the challenged conduct also constitutes fraud.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT X
### PLAINTIFF V. ALL DEFENDANTS
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

155.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred fifty-four (154) as though fully set forth herein.

156.    The conduct of defendants was extreme and outrageous, intentional and/or reckless, and caused plaintiff to suffer severe emotional distress with associated physical symptoms.  In particular, the individual and collective actions of defendants, including but not limited to, the intentional use of legal/administrative process/proceedings by lawyers for wrongful/unlawful purposes, including manufacturing reason(s) for purposes of seeking to impair plaintiff's law license (and ability to earn a living), all as part of corrupt plan/scheme to extort plaintiff in connection with the publication of book concerning defendants' wrongdoing, any account by plaintiff of the subject matter of the book, any related claims in connection with

defendants' wrongful/unlawful activities, and/or to retaliate against plaintiff for engaging in protected activity, meets the required standard for "outrageousness."

157.    For the same reasons the challenged conduct violates Section 1983, RICO (§1962(c)), RICO (§1962(d)), and constitutes an abuse of process, the challenged conduct also constitutes intentional infliction of emotional distress.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT XI
## PLAINTIFF V. ALL DEFENDANTS
## CIVIL CONSPIRACY

158.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred fifty-seven (157) as though fully set forth herein.

159.    Defendants acted with a common purpose to do an unlawful act, or to do a lawful act by unlawful means or for an unlawful purpose, and committed an overt act in furtherance of

the common purpose, all with an intent to injure plaintiff and/or with malice, and which did injure plaintiff.

160.    For the same reasons the challenged conduct violates Section 1983, RICO (§1962(c)), RICO (§1962(d)), and constitutes an abuse of process, the challenged conduct also constitutes a civil conspiracy.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial concerning all claims which may be tried by a jury.


**RICHARD J. SILVERBERG**


BY: <u>/s/ Richard J. Silverberg</u>
     **RICHARD J. SILVERBERG**
     I.D. No. 48329
     P.O. Box 30433
     Philadelphia, PA 19103
     215-563-6369
     rjs@rjsilverberg.com