## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD J. SILVERBERG                          :
                                               :
                Plaintiff           :        CIVIL ACTION
                                               :
           v.                        :
                                               :
DUPONT DE NEMOURS, INC.                        :        NO.    24-924
       -and-                             :
DOW, INC.                                      :
       -and-                             :
CORTEVA, INC.                                  :
       -and-                             :
INTERNATIONAL FLAVORS AND                      :
  FRAGRANCES, INC.                             :
       -and-                             :
AVANTOR, INC.                                  :
       -and-                             :
LIBERTY MUTUAL GROUP, INC.                     :
       -and-                             :
THE VANGUARD GROUP, INC.                       :
       -and-                             :
WILLIAM PENN FOUNDATION                        :
       -and-                             :
CITY OF PHILADELPHIA                           :
       -and-                             :
BALLARD SPAHR LLP                              :
       -and-                             :
GELLERT SCALI BUSENKELL                        :
  & BROWN LLC                                 :
       -and-                             :
OFFICE OF DISCIPLINARY COUNSEL                 :                                              :
       -and-                             :
EDWARD BREEN                                   :
       -and-                             :
ANDREW LIVERIS                                 :
       -and-                             :
RAJIV GUPTA                                    :
       -and-                             :
ANDREAS FIBIG                                  :
       -and-                             :

DAVID H. LONG                                    :
            -and-                                :
TIMOTHY BUCKLEY                                  :
            -and-                                :
JANET HAAS, M.D.                                 :
            -and-                                :
JAMES KENNEY                                     :
            -and-                                :
MARCEL S. PRATT, ESQUIRE                         :
            -and-                                :
DIANA CORTES, ESQUIRE                            :
            -and-                                :
MARISSA O'CONNELL, ESQUIRE                       :
            -and-                                :
BRIAN R. CULLIN, ESQUIRE                         :
            -and-                                :
GARY F. SEITZ, ESQUIRE                           :
            -and-                                :
THOMAS J. FARRELL, ESQUIRE                       :
            -and-                                :
RICHARD HERNANDEZ, ESQUIRE                       :
            -and-                                :
JOSHUA ROBERTS                                   :
            -and-                                :
DANIEL ANDERS                                    :
            -and-                                :
JOHN DOE NOS. 1-15                               :
                                                 :
            Defendants                           :

## AMENDED CIVIL ACTION

## PARTIES

1.     Plaintiff, Richard J. Silverberg, is an individual with a principal address in

Philadelphia, Pennsylvania.

2.     Defendant, DuPont de Nemours, Inc. (DuPont), is a Delaware corporation with a

principal place of business in Wilmington, DE.

3.      Defendant, Dow, Inc. (Dow), is a Delaware corporation with a principal place of business in Midland, MI.

4.      Defendant, Corteva, Inc. (Corteva), is a Delaware corporation with a principal place of business in Indianapolis, IN.

5.      Defendant, International Flavors & Fragrances, Inc. (IFF), is a New York corporation with a principal place of business in New York, NY.

6.      Defendant, Avantor, Inc. (Avantor), is a Delaware corporation with a principal place of business in Radnor, PA.

7.      Defendant, Liberty Mutual Group, Inc. (Liberty Mutual), is a manufacturer and provider of insurance products and services and/or owns/holds companies that provide such products/services, including Liberty Life Assurance Company of Boston (Liberty Life) prior to its sale to Lincoln Financial Group, with a principal place of business in Boston, MA.[1][2]

8.      Defendant, The Vanguard Group, Inc. (Vanguard), is a manufacturer and provider of financial products and services with a principal place of business in Malvern, PA.

9.      Defendant, William Penn Foundation (William Penn), is a private nonprofit charitable organization with a principal place of business in Philadelphia, PA.

---

[1] On August 15, 2023, Liberty Mutual Group, Inc. filed a Corporate Disclosure Statement (CDS) pursuant to Federal Rule of Civil Procedure 7.1(a)(1).  Pursuant to the CDS, Liberty Mutual Holding Company, Inc. owns 100% of the stock of LMHC Massachusetts Holdings, Inc., and LMHC Massachusetts Holdings, Inc. owns 100% of the stock of Liberty Mutual Group, Inc.

[2] For purposes of the instant Civil Action, all references to Liberty Life should be treated as references to Liberty Mutual.

10. Defendant, City of Philadelphia (City), is a municipal corporation with a principal place of business in Philadelphia, PA.

11. Defendant, Ballard Spahr LLP, is a duly organized law firm with a principal place of business in Philadelphia, PA.

12. Defendant, Gellert Scali Busenkell & Brown LLC (Gellert Scali), is a duly organized law firm with a principal place of business in Philadelphia, PA.

13. Defendant, Office of Disciplinary Counsel, is an administrative agency with a principal place of business in Philadelphia, PA.

14. Defendant, Edward Breen, is an individual with a principal address in Wilmington, DE.

15. Defendant, Andrew Liveris, is an individual with a principal address in Newark, CA.

16. Defendant, Rajiv Gupta, is an individual with a principal address in Radnor, PA.

17. Defendant, Andreas Fibig, is an individual with a principal address in New York, NY.

18. Defendant, David H. Long, is an individual with a principal address in Boston, MA.

19. Defendant, Timothy Buckley, is an individual with a principal address in Malvern, PA.

20. Defendant, Janet Haas, M.D., is an individual with a principal address in Philadelphia, PA.

21.    Defendant, James Kenney, is an individual with a principal address in Philadelphia, PA.

22.    Defendant, Marcel S. Pratt, Esquire, is an individual with a principal address in Philadelphia, PA.

23.    Defendant, Diana Cortes, Esquire, is an individual with a principal address in Philadelphia, PA.

24.    Defendant, Marissa O'Connell, Esquire, is an individual with a principal address in Philadelphia, PA.

25.    Defendant, Brian R. Cullin, Esquire, is an individual with a principal address in Philadelphia, PA.[3]

26.    Defendant, Gary F. Seitz, Esquire, is an individual with a principal address in Philadelphia, PA.

27.    Defendant, Thomas J. Farrell, Esquire, is an individual with a principal address in Harrisburg, PA.

28.    Defendant, Richard Hernandez, Esquire, is an individual with a principal address in Philadelphia, PA.

29.    Defendant, Joshua Roberts, is an individual with a principal address in Philadelphia, PA.

---

[3] For purposes of the instant Civil Action, unless otherwise stated, references to the "City" or "City Defendants" are to defendants City, Kenney, Pratt, Cortes, O'Connell, and Cullin.

30.     Defendant, Daniel Anders, is an individual with a principal address in Philadelphia, PA.[4]

31.     Defendants, John Doe Nos. 1-15, are officers, directors, executives, managers, administrators, attorneys, employees, and/or other representatives of the corporate defendants, the City, William Penn, Office of Disciplinary Counsel, and/or defendant law firms.

32.     At all times relevant and material hereto, plaintiff was a licensed attorney, the former sole principal at Richard J. Silverberg & Associates, P.C., a law firm, and a former member of ELS Realco LLC (ELS), a former Delaware multi-member limited liability company.

33.     At all times relevant and material hereto, defendant Office of Disciplinary Counsel (ODC) was an administrative agency charged with enforcement of the Pennsylvania Rules of Professional Conduct (RPC).[5]

34.     At all times relevant and material hereto, defendant Farrell was Chief Disciplinary Counsel, ODC, was the highest-ranking policy-making official at the ODC, had supervisory authority for defendant Hernandez, and authorized, ratified, and/or filed the Petition for Discipline addressed to plaintiff.

35.     At all times relevant and material hereto, defendant Hernandez was Disciplinary Counsel (DC), ODC, and filed the Petition for Discipline addressed to plaintiff.[6]  Further, at all times relevant and material hereto, all actions by defendant Hernandez have been at the specific

---

[4] For purposes of the instant Civil Action, unless otherwise stated, references to the "judicial/disciplinary defendants" are to defendants ODC, Farrell, Hernandez, Roberts, and Anders.

[5] Unless otherwise stated, for purposes of the instant Complaint, the actions of the Office of Disciplinary Counsel and Disciplinary Counsel are treated as one in the same.

[6] *See note 4*, *supra*.

direction and insistence of defendant Farrell, and/or otherwise were authorized/ratified by defendant Farrell and the ODC for purposes of proxy war.

36.    At all times relevant and material hereto, defendant Roberts held the position title of judge, Court of Common Pleas, Philadelphia County.

37.    At all times relevant and material hereto, defendant Anders held the position title of judge, Court of Common Pleas, Philadelphia County.[7]

38.    At all times relevant and material hereto, unless otherwise stated herein, the individual defendants acted within the course and scope of their employment and in furtherance of their respective employers' business and interests.  Alternatively, the individual defendants acted solely in their individual capacities.  To the extent that an agency relationship existed or may have existed between any of the entities or persons identified herein, or it is determined that an agency relationship existed, the entities/persons acted outside the scope of and/or exceeded said agency.


### JURISDICTION AND VENUE

39.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that plaintiff has brought the instant Civil Action pursuant to, *inter alia*, 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.  Supplemental jurisdiction over plaintiff's state law claims is pursuant to 28 U.S.C. § 1367.

---

[7] The position/position titles of certain defendants may not be stated with complete precision.

40.     Venue properly lies in the United States District Court for the Eastern District of Pennsylvania since the alleged violations of plaintiff's federal and state law rights occurred within the geographical boundaries of the Eastern District of Pennsylvania.

## FACTUAL ALLEGATIONS

### Silverberg v. DuPont (SIII)

41.     Plaintiff incorporates, by reference thereto, the Amended Complaint in the matter of *Silverberg v. DuPont de Nemours, Inc.*, No. 23-1868 (E.D.Pa.  May 17, 2023)("Silverberg III" or "SIII"), as though fully set forth herein.[8]/[9]

### The Proxy War

42.     On or about April 22, 2016, plaintiff sent an email to counsel for certain defendants in connection with a prior litigation in which they and/or their affiliates were parties including, among others, defendants Dow, DuPont, Corteva, and Liberty Mutual, which stated in pertinent part:

---

[8] On September 25, 2023, plaintiff filed an Amended Complaint.
[9] On April 2, 2024, the instant case was consolidated with SIII for purposes of pretrial motions and proceedings.

8

It seems like a good time to let you and others know that I will soon be completing my book concerning the Jackson odyssey.[10] As I expected, this project has generated great interest since the cases are a window into a complex and disturbing aspect of corporate America, the conduct of corporate officials and corporate counsel, and our broken justice system. While the book examines the underlying conduct it also explores the business judgment, legal and strategic decisions, individual actions, and judicial proceedings that cumulatively led to and killed-off multiple causes of action.

43.    The purpose of the April 2016 email was to offer the parties the opportunity to acquire the publishing rights/intellectual property in advance of the anticipated completion of the book, but there was no response to plaintiff's overture.

44.    On August 15, 2016, March 6, 2017, and October 23, 2017, plaintiff sent three follow-up emails but again received no (formal) response.

45.    The response to the April 22, 2016 email (and follow-up emails) was both a culmination and coalescence of multiple events, interests, risks/exposures, and the collective effort of the individuals/entities associated with them.

46.    Upon information and belief, the April 22, 2016 email and follow-up emails led certain individual defendants and/or the companies/organizations with which they were/are affiliated, including defendants Gupta, Breen, Liveris, Long, Haas, and/or others, either directly and/or by and through their representatives, associates, affiliates, and/or others (hereinafter the

---

[10] The "Jackson odyssey" referred to a series of fraud and racketeering cases that Mark Jackson, a former Rohm and Haas Company (R&H) employee, had brought against R&H, Liberty Mutual, and others, in both Pennsylvania state and federal courts.  *See gen'lly Mark A. Jackson v. Rohm & Haas Company et al.*, Philadelphia Court of Common Pleas, June Term 1999, No. 1906; *Mark A. Jackson v. June McCrory*, Philadelphia Court of Common Pleas, June Term 1999, No. 3824.  *See also Mark Jackson v. Rohm and Haas Company*, United States District Court for the Eastern District of Pennsylvania, Nos. 03-5299, 05-4988, and 06-3682.

"Core Defendants") to determine that action needed to be taken and to formulate a strategy

concerning precisely what that action should be.[11]  Further, because those actions required that

decisions be made by and/or on behalf of certain companies, organizations and/or entities, as

well as the deployment of company resources, such actions only could have been (and actually

were) authorized/ratified at the policy-making level; in other words, by the Core Defendants

themselves and/or their authorized representatives.[12]

47.      In an effort to deter, dissuade, discourage, and/or prevent publication of the

anticipated book, any account by plaintiff of the subject matter of the book, and/or any related

claims in connection with defendants' wrongful/unlawful activities, the Core Defendants

determined to take a series of wrongful/unlawful actions against plaintiff and ELS Realco LLC

(a limited liability company (LLC) with which he was affiliated), and to do so by and through the

City of Philadelphia and its lawyers.  In effect, the Core Defendants determined to engage in an

illegitimate "proxy war" whereby the actions of the City and/or others were at the direction, on

behalf, and/or for the benefit of all defendants, and/or otherwise were either authorized and/or

ratified by them.

---

[11] The Core Defendants are comprised of those whose actions were the subject of the emails and which generally are described in the SIII Amended Complaint under the heading "The Reasons for the Proxy War," as well as those who believed their professional/personal interests and concerns (and/or those of their affiliates) would be adversely affected by the anticipated book, any account by plaintiff of the subject matter of the book, and/or any events/claims related thereto.

[12] Further, the actions of the individual defendants/leaders were so extreme, and so contrary to the policies, practices, and interests of the companies/organizations (and their respective stakeholders) with which they were/are affiliated, they only could have occurred and/or been authorized/ratified at the policy-making level.

48.    The determination to engage in a proxy war - which primarily consisted of activities in connection with the filing/pursuit of the tax/PUFTA matters[13] - reflected the Core Defendants' recognition of and fear concerning the true extent of their wrongful/unlawful actions, the related risks/exposures, and of the consequences of the entire pattern of conduct being revealed and explained in a meaningful way to shareholders, stakeholders, regulators, lawmakers, law enforcement, market participants, both the for-profit and non-profit communities, and the public at large.

49.    Upon information and belief, the various actions of the Core Defendants, and how those actions reflected upon the companies/organizations with which they were/are affiliated, were a substantial motivating factor in the decision to both undertake and pursue the proxy war. Further, those same companies/organizations have participated in (either directly or indirectly) and/or have influenced the Core Defendants' actions concerning the proxy war.

50.    Upon information and belief, a combination of factors including certain pre-existing professional and/or personal relationships, as well as certain incentives, led the Core Defendants to engage the City/City officials, Gellert Scali, and/or others for purposes of executing the proxy war.[14]

51.    The determination to engage the City and Gellert Scali to execute the proxy war was central to the Core Defendants' overall strategy that any action(s) be carried out by a third

---

[13] *See City of Philadelphia v. Richard J. Silverberg & Assoc., et al*., Philadelphia Court of Common Pleas, March Term 2008, No. 1510 (the "tax" case); *City of Philadelphia v. ELS Realco LLC, et al*., Philadelphia Court of Common Pleas, September Term 2019, No. 3805 (the "PUFTA" case).

[14] As described herein, the Core Defendants also engaged Vanguard for purposes of restricting plaintiff's IRA and defendants Gellert Scali/Seitz in connection with the Petition for Appointment of Sequestrator.

party(s) with the authority/ability to carry out such actions, that the actions be "defensible" even if they actually were wrongful/unlawful, and that the Core Defendants/other defendants not be directly involved in any such actions (except those who actually executed the proxy war).

52.    Under the guise of seeking to recover past due taxes that supposedly were due and owing, the City filed/pursued two lawsuits against plaintiff for reasons having nothing to do with taxes or the City more generally, which not only was (among other things) a use of legal process/proceedings for wrongful/unlawful purposes, fraudulent, an abuse of process, and a breach of fiduciary duty, but also was directly contrary to the City's own legal and pecuniary interests and those of taxpayers.

53.    Accordingly, in or around June 2017, nearly nine years after the City had abandoned the matter but only three months after plaintiff's March 2017 email concerning his anticipated book, the City engaged in a "renewed" collection/enforcement effort in connection with the June 2008 judgment in the original tax case.

54.    Since that time, the City has filed/pursued the PUFTA claim, engaged in various tax-related litigation activities, including numerous execution/enforcement actions, but repeatedly has failed/refused to actually recover the funds the City has claimed are due and owing despite the legal ability (and repeated opportunities) to do so.[15]

55.    The City's various actions have revealed the City has not filed/pursued the tax/PUFTA matters for purposes of actually recovering past due taxes that supposedly are due and owing, but rather for purposes of the proxy war, specifically: a) to harass, intimidate,

---

[15] Had the City actually recovered the funds and satisfied its claims/judgments, the Core Defendants/City would not have been able (to continue) to use the tax/PUFTA matters for purposes of the proxy war.

oppress, coerce, threaten, instill fear, and retaliate against plaintiff in connection with his anticipated book, any account by plaintiff of the subject matter of the book, and/or any related claims in connection with defendants' wrongful/unlawful activities; and b) to retaliate against plaintiff for engaging in protected activity.

56.    A primary purpose of filing/pursuing the tax/PUFTA matters, and of the proxy war itself, simply has been to entangle plaintiff in baseless litigation, which has served multiple strategic/tactical purposes, all of which have constituted multiple legal, administrative, ethical and/or fiduciary violations.

57.    Central to the Core Defendants' strategy was to ensure that those executing the proxy war had a "colorable" defense for their actions.  For example, but not by way of limitation: a) the City has claimed that it merely has been seeking to recover past due taxes that were due and owing; b) Vanguard has claimed that it merely was responding to a Writ of Execution that had been served upon it; and c) defendants Gellert Scali and Seitz have claimed they merely were carrying out the functions of a Sequestrator.  In fact, all defendants engaged in Constitutional violations and/or conduct of an enterprise through a pattern of racketeering activity, a RICO conspiracy, and either organized and/or participated in executing the proxy war.

58.    As described in SIII and herein, all actions taken by the Core Defendants, the City, its lawyers, Gellert Scali, and defendants Cullin, Anders, Roberts, ODC, Farrell, Hernandez and/or others as part of the proxy war were on behalf (and for the benefit) of all defendants, and were either authorized and/or ratified by them.

**The Petition for Discipline**

59.    On or about March 24, 2022, plaintiff received via email a 39-page letter from defendant Hernandez informing plaintiff that Disciplinary Complaints had been filed against plaintiff.[16]  In short, the DC alleged that plaintiff's actions in connection with the tax/PUFTA matters had violated the RPC and requested a response.  The letter also informed plaintiff that the Complaints had been filed by defendants Anders and Cullin.

60.    On or about April 6, 2022, plaintiff submitted via email a 21-page response to defendant Hernandez which stated, in pertinent part:  a) plaintiff had not violated the RPC; b) plaintiff's allegations, claims, and statements in the tax/PUFTA matters (as well as SI/SII) are based upon plaintiff's knowledge, information, and/or belief, are properly supported by the facts/record and/or inferences reasonably drawn therefrom, and otherwise comply with relevant legal and ethical standards; and c) the City had not filed/pursued the tax/PUFTA matters in order to recover on its claims but rather for purposes of the proxy war which has included, among other things, the filing of baseless Complaints with the Disciplinary Board of the Supreme Court of Pennsylvania.

61.    During the ensuing months, plaintiff sent additional letters/emails to defendant Hernandez providing additional information and further explaining the wrongful/unlawful actions of the City and defendant Roberts in connection with the tax/PUFTA matters, as well as plaintiff's response to those actions.

---

[16] Unless otherwise stated, for purposes of the instant Complaint, the actions of the ODC and DC are treated as one in the same, and references to the ODC and DC are used interchangeably.

62.     Plaintiff received no response to the letter/response of April 6, 2022 or to any of the follow-up letters/emails to defendant Hernandez.

63.     On or about December 19, 2023, nearly 2 years after plaintiff received the March 24, 2022 letter from defendant Hernandez, plaintiff was personally served with a 65-page Petition for Discipline (the "Petition").[17]  The Petition was filed by defendant Hernandez (as Disciplinary Counsel) on behalf of defendant Farrell (as Chief Disciplinary Counsel).

64.     The Petition primarily is based upon events occurring from 2019-2021 in the tax/PUFTA matters, but also includes allegations in connection with SI and SII.[18]  While the Petition generally alleges that plaintiff violated the RPC, the ODC/DC failed/refused to identify specific actions by plaintiff that purportedly violated specific provisions of the RPC.

**The Disciplinary Complaints**

65.     In the March 24, 2022 letter, the DC informed plaintiff that the Disciplinary Complaints leading to the Petition had been filed by defendants Anders and Cullin.

---

[17] The Petition was filed on December 6, 2023.
[18] *See Silverberg v. City of Philadelphia, et al.,* United States District Court for the Eastern District of Pennsylvania, No. 19-2691 (as amended September 3, 2019)("Silverberg I" or "SI"); *ELS Realco LLC, et al. v. City of Philadelphia, et. al.*, United States District Court for the Eastern District of Pennsylvania, No. 5034 (filed Oct. 12, 2020)("Silverberg II" or "SII").

66.     Plaintiff engaged in no violations of the RPC, including in proceedings involving defendants Anders and Cullin, nor does the Petition identify purported violations by plaintiff in connection with defendants Anders and/or Cullin.[19]

67.     Accordingly, defendants Anders and Cullin did not file Disciplinary Complaints based upon a legitimate, good faith belief or evidence that plaintiff violated the RPC, but rather for purposes of the proxy war - a corrupt scheme or plan to harass, intimidate, oppress, coerce, extort, and retaliate against plaintiff in connection with his anticipated book and/or claims concerning defendants' wrongful/unlawful conduct.  In so doing, defendants Anders and Cullin themselves violated the RPC by submitting knowingly false/frivolous Disciplinary Complaints, and/or doing so for knowingly improper/wrongful purposes.

**The Petition for Discipline is Pre-empted by SIII**

68.     All of plaintiff's allegations/claims in connection with the tax/PUFTA matters, as well as SI-SIII, are based upon plaintiff's knowledge, information, and/or belief, are properly supported by the record and/or inferences reasonably drawn therefrom, and otherwise comply with relevant standards.

69.     The Petition generally addresses the same subject matter as SIII, including the same and/or substantially the same factual/legal questions and/or is encompassed by them.

---

[19] Defendant Anders was not a participant, and otherwise had no first-hand knowledge, concerning nearly all of the events identified in the Petition, and no violations of the RPC occurred in those events in which he was a participant.

70.     Where, as here, an administrative agency files a Petition concerning matters that are the subject of a plaintiff/respondent's federal claims/lawsuit, and there are genuine issues of material fact, the administrative proceedings are pre-empted.

71.     Nevertheless, the ODC/DC still has proceeded with the Petition.

**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 1**
**The Tax/PUFTA Matters are a Sham**

72.     The term "sham" applies to a case or series of cases where the plaintiff is indifferent to the outcome of the litigation, and instead seeks to impose a collateral harm on the defendant.  Sham litigation does not involve a bona fide grievance, and therefore does not come within the First Amendment right to petition.

73.     The First Amendment interests associated with private litigation (e.g., compensation for violated rights and interests, the psychological benefits of vindication, and the public airing of disputed facts) are not advanced when the litigation is based on intentional falsehoods or knowingly frivolous claims.[20]

74.     Since at least 2017, the City did not file/pursue the tax/PUFTA matters in order to recover on its claims, and never has done so.  In particular, but not by way of limitation:  a) from October 2019-June 2021, the City encumbered plaintiff's Vanguard account, an individual

---

[20] As set forth in the SIII Amended Complaint, the PUFTA Complaint alleged, among other things, that plaintiff was the "sole member of Defendant LLC" and "transferred monies to [ELS] with actual intent to hinder, delay and/or defraud" the City, allegations/claims that were either knowingly false or made in reckless disregard for whether they were true or false.  The SIII Amended Complaint further alleges the City advanced the knowingly false allegations for the specific purpose of establishing an illegitimate liability claim(s) against plaintiff and ELS Realco, LLC.

retirement account (IRA); b) although the Vanguard account contained sufficient funds to satisfy the City's claims/judgments, the City never levied the account; c) in May and July 2021, plaintiff agreed to pay the full amount the City claimed was due and owing in the tax/PUFTA matters; d) the City rejected plaintiff's offers because plaintiff would not release his claims against the City/City officials, including claims in connection with their tax collection activities; and e) during 2019-2021, the City engaged in numerous discovery-related activities purportedly for purposes of facilitating recovery on its claims/judgments even though the City already had encumbered (but refused to levy) plaintiff's Vanguard account, thereby rendering all such discovery unnecessary, improper, and abusive.  Accordingly, the City was indifferent to the outcome of the litigation and/or proceeded against plaintiff primarily for purposes of imposing collateral harm through the wrongful/unlawful use of legal process/proceedings.[21]

75.    A defendant cannot commit legal/ethical violations defending himself against claims and in proceedings which are a sham - a party cannot violate standards in proceedings that are not properly supported by those same standards.

**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 2**
**The City Admitted that it Did Not File/Pursue the Tax/PUFTA**
**Matters for Purposes of Recovering on its Claims/Judgments**

76.    At a hearing conducted on July 7, 2021, defendant Cullin explained the City's reason(s) for "dissolv[ing]" the Vanguard Writ:

> [T]he City dissolved the [Vanguard Writ] because we have alternate avenues in which to collect this money. And it was a strategic decision to pursue a sheriff sale that is quicker, easier.

---

[21] As described in the SIII Amended Complaint, the City lacked probable cause to file the PUFTA claim, which was time-barred by more than four years and based upon knowingly false and/or reckless allegations/claims.

> Again, a strategic decision made by the City. Mr. Silverberg
> doesn't get to choose how the City collects its money. That's the
> plaintiff's decision to make, not Mr. Silverberg's.

77.     Defendant Cullin's statements that it was a "strategic decision" to "dissolve" the

Writ and to do so "because [the City had] alternate avenues in which to collect this money,"

effectively admitted that the City was executing a "strategy" whereby its goal/objective was to

encumber but not actually obtain plaintiff's funds.  Accordingly, defendant Cullin admitted that

execution/enforcement activities by the City were not for purposes of actually recovering on the

City's claims/judgments.

78.     Defendant Cullin's statement that plaintiff "doesn't get to choose how the City

collects its money. That's the plaintiff's decision to make," further admitted it was a deliberate

decision to encumber but not to levy the Vanguard account.

79.     Since the City was not engaged in execution/enforcement activities for purposes

of recovering on its claims/judgments, yet took numerous actions against plaintiff in connection

with such activities, the City admitted that it was utilizing legal process/proceedings for

knowingly wrongful/unlawful purposes.


**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 3**
**The Petition Does Not Identify Specific Violations of the RPC by**
**Plaintiff and There is No Foundation for the Primary Allegations/Claims**

80.     While the Petition provides a detailed account of the procedural history, the DC

failed/refused to: a) identify which specific action(s) by plaintiff purportedly violated which

specific provision(s) of the RPC; b) explain how plaintiff supposedly violated the Rules; and c)

provide citations/annotations linking specific actions by plaintiff to specific violations.[22]  Rather, the DC summarily concluded that plaintiff violated the RPC without ever identifying/describing an actual violation.[23]

81.    The DC also alleged that certain allegations, claims, and/or statements by plaintiff in connection with defendant Roberts were knowingly false/reckless, frivolous, and/or unsupported by the record.  The DC made the same allegations/claims in connection with letters plaintiff sent to the Hon. Max Baer, Chief Justice, Supreme Court of Pennsylvania, and the Hon. Idee Fox, President Judge, Court of Common Pleas of Philadelphia County.[24]/[25]

82.    There is no foundation/basis for the DC's allegations/claims.  Rather, the DC simply identifies certain allegations, claims, and/or statements and then summarily characterizes them as false/frivolous without providing any support, explanation, and/or otherwise demonstrating how/why the challenged assertions were false/frivolous.

---

[22] Among other things, the DC's failure to specifically identify violations and/or explain/justify his position has prevented plaintiff from challenging any purported violation(s).

[23] The Petition references plaintiff's purported violation of Court Orders.  However, violation of a Court Order - a common occurrence in litigation for a variety of reasons (e.g., violations in connection with scheduling orders, case management orders, discovery-related matters, etc.) - does not constitute a violation of the RPC, nor should it.  Rather, these are administrative matters that are managed by the courts.  Further, plaintiff responded to all or nearly all of the challenged Orders by filing a Motion for Protective Order and/or to Stay Proceedings.

[24] Plaintiff sent detailed letters to Justice Baer and Judge Fox for purposes of, among other things, notifying them of the wrongful/unlawful actions occurring in the tax/PUFTA matters, including the conduct of Judge Roberts, and to request an investigation.

[25] The letters to Justice Baer and Judge Fox were, in substantial part, addressed to them in their administrative capacities.  For example, in a letter dated August 8, 2021, plaintiff stated, "I am again calling upon the Chief Justice as the head of the AOPC and the President Judge to take immediate corrective actions[.]"  "AOPC" refers to the Administrative Office of Pennsylvania Courts.

83.    The failure/refusal by ODC/DC to provide any support for its conclusory allegations/claims that plaintiff made knowingly false/frivolous allegations, claims, and/or statements undercuts the ODC/DC's allegations, and the Petition for Discipline more generally.[26]

84.    There is no violation of the RPC where, as here, a party or counsel makes true statements, whether contained in a legal filing, letter, or other communication, nor is there a violation when a party or counsel identifies and reports misconduct.  Even if it ultimately is determined that the threshold for misconduct has not been met, it still does not mean that the complaining party's allegations were knowingly false/reckless, frivolous, and/or unsupported by the record.  Further, all of the challenged allegations, claims, and statements, including those in the letters to Justice Baer, Judge Fox, and Judge Roberts are subject to (and protected by) judicial privilege.

**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 4**
**The Disciplinary Complaints/Petition Cannot be Reconciled with**
**the Actions of Defendants Cullin, Anders, and Roberts in SII/SIII**

85.    Although defendants Cullin, Anders, and Roberts were/are defendants in SII/SIII, and although SII/SIII are predicated upon the same and/or substantially similar allegations/ claims as the Petition, none filed a Rule 11 Motion and/or claimed that plaintiff's allegations/ claims in SII/SIII are knowingly false/reckless and/or frivolous.

---

[26] The DC provided no evidence concerning plaintiff's motive or intent, which is central to such allegations/claims.

86.     Of the 36 defendants in SII/SIII combined,[27] none characterized plaintiff's allegations/claims as knowingly false/reckless and/or frivolous, only the City filed a Rule 11 Motion (in SII),[28] and the district court never made any such determination.

87.     Where a defendant declines to file a Rule 11 Motion, the defendant implicitly acknowledges that the allegations/claims are "nonfrivolous."[29]

88.     In fact, the only person claiming that plaintiff has fabricated his case/claims, violated the RPC, and should be disciplined is the DC who was not a participant and who has no direct knowledge concerning the underlying events.

89.     Where, as here, the DC takes a position(s) that is contrary to and/or inconsistent with the position(s) taken by the subject(s) of the Petition (i.e., defendants Anders, Cullin, and Roberts), the Petition has not been filed/pursued in good faith and/or for a proper purpose.

90.     The failure/refusal by defendants to file Rule 11 Motions in SII/SIII confirms that the Disciplinary Complaints are not based upon a genuine, good faith belief or evidence that plaintiff's actions violated the RPC.  Rather, defendants Cullin and Anders utilized the disciplinary process in an improper effort to obtain the same and/or substantially the same

---

[27] Certain parties are defendants in both cases.

[28] The City's Motion was addressed to the SII Amended Complaint.  The City did not argue that plaintiff's allegations/claims were knowingly false/frivolous, and did not challenge the core allegations contained in the SII Amended Complaint.  In fact, the City's argument on the merits was largely contained in an unsupported footnote.

[29] Importantly, the district court already had indicated (on a significantly less-developed record) that plaintiff had stated claims that the City's "tax collection activities" violated plaintiff's speech and due process rights.  On January 8, 2020, the district court dismissed SI without prejudice on jurisdictional grounds, but not before determining the SI Amended Complaint stated claims that "the City Defendants' tax collection activities violated Plaintiff's free speech and due process rights under the First and Fourteenth Amendments, respectively," specifically referencing Count I (Section 1983 - Violation of Constitutional Rights) and Count VII (Section 1983 - Retaliation).  *See SI, Mem. Op. of Jan. 8, 2020*.

remedies that they did not believe they could obtain and/or were not entitled to obtain through the legal process.

**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 5**
**The Actions of ODC/DC in Connection with Defendant Roberts**

91.    Although defendant Roberts did not file a Disciplinary Complaint, a primary focus of the Petition is plaintiff's allegations/claims in connection with the actions of defendant Roberts, the Court of Common Pleas judge who presided over the relevant proceedings in the tax/PUFTA matters.

92.    It is not the role of ODC/DC to advocate for a defendant in a legal dispute, to allege in an administrative setting what a defendant himself has failed/refused to allege in a legal setting, to seek to influence or undercut a plaintiff/respondent's legal claims, to run "interference" for CCP judges who are alleged to have engaged in wrongful/unlawful conduct and/or misconduct, to act as de facto jury in cases pending before the district court, and/or otherwise to take positions that are contrary to the actual facts and/or prevailing standards, especially when the administrative agency is legally pre-empted from undertaking the matter in the first instance.

93.    To the extent that ODC/DC and Judge Roberts engaged in a coordinated and/or cooperative effort in connection with the preparation and filing of the Petition, they did not do so based upon a legitimate, good faith belief or evidence that plaintiff violated the RPC, but rather for purposes advancing and protecting the interests of defendant Roberts and the Pennsylvania courts more generally, notwithstanding substantial evidence that defendant Roberts engaged in legal and ethical violations in connection with the tax/PUFTA matters.

23

**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 6**
<u>**The ODC/DC Has a Conflict of Interest**</u>

94.    Defendants Anders and Roberts are judges of the Court of Common Pleas.

Further, defendants ODC, Farrell, and Hernandez themselves are defendants in the instant

matter.  Nevertheless, ODC has conducted an investigation and filed/pursued a Petition for

Discipline against plaintiff even though ODC is an arm of the Supreme Court of Pennsylvania,

thereby creating a conflict with respect to any investigation in connection with judges in the

Commonwealth, as well as any investigation concerning ODC and/or its officials,

representatives, and/or employees.

**The ODC/DC did not Conduct a Proper/Legitimate Investigation - Part 7**
<u>**The ODC/DC did not Properly Consider/Evaluate the Actual Facts**</u>

95.    The March 24, 2022 letter from defendant Hernandez states, in pertinent part:

> It is also important for you to understand that it is the obligation of
> our office to develop all information relevant to a complaint,
> including information that may justify or exonerate the alleged
> actions of the plaintiff-attorney or mitigate the seriousness of the
> violations that may have occurred.

96.    As described herein, the DC did not "develop all information" relevant to the

Complaints(s), including exculpatory information, and/or intentionally ignored such information.

In particular, but not by way of limitation, the ODC/DC failed/refused to properly

consider/evaluate, *inter alia*:  a) that the actions of the City defendants demonstrated that since at

least 2017, the City defendants did not file/pursue the tax/PUFTA matters in order to recover on

the City's claims and, in fact, have never done so; b) the City did not engage in various litigation

activities in order to obtain the remedies identified in its motions/petitions, and ultimately did not

pursue and/or obtain said remedies; c) the City's 19-month restriction of plaintiff's Vanguard

account, that the account contained sufficient funds to satisfy the City's claims/judgments, and

the City's failure/refusal to levy the account; d) that the Vanguard Writ, filed on October 2,

2019, undercut further pursuit of the tax case and the PUFTA case (filed on October 1, 2019) in

its entirety; e) that the City engaged in various litigation activities, including discovery-related

matters, during the same time period the City had encumbered plaintiff's Vanguard account,

thereby foreclosing the need for discovery or further proceedings of any kind; f) plaintiff's offers

(in May and July 2021) to pay the full amount the City claimed was due and owing, and the

City's retaliatory rejection of the offers based upon plaintiff's refusal to release his

Constitutional, federal statutory, and other claims against the City/City officials in connection

with (among other things) their tax collection activities; g) the Petition for Appointment of

Sequestrator, which pursuant to the plain meaning of Rule 3114 had no proper/legitimate

application to the tax/PUFTA matters and instead was utilized in an improper/illegitimate effort

to forcibly remove plaintiff from his home; and h) that Judge Roberts was aware of and/or

facilitated the City's wrongful/unlawful litigation activities, and engaged in numerous instances

of wrongful, unlawful, and/or unethical conduct in connection with the tax/PUFTA matters.[30]

97.     Accordingly, while the ODC/DC stated that "it is the obligation of our office to

develop all information relevant to a complaint," the ODC/DC failed/refused to include any

---

[30] For example, but not by way of limitation, on October 29, 2021, Judge Roberts signed an
Order granting the Sequestrator the authority to "take control" of the Market Street property, a
remedy which is not available under Pennsylvania Rule of Civil Procedure 3114 or relevant
Pennsylvania law.  Further, on July 23, 2021, Judge Roberts granted the City's Petition for
Contempt based upon plaintiff's purported violation of a Rule even though no Rule had been
issued, and the City's Petition was based upon purported discovery violations.

exculpatory information despite the fact that such information was a matter of record, had been provided to the ODC/DC by plaintiff, would have been discovered had ODC/DC conducted a proper/legitimate investigation, and/or was known to ODC/DC which chose to not include it.

**The Filing and Service of the Petition for Discipline**
**were Timed to Coincide with Events Occurring in SIII**

98.     Plaintiff was served with the Petition on December 19, 2023, nearly 2 years after plaintiff was notified that Disciplinary Complaints had been filed but only 30 days after plaintiff filed his Response to the SIII defendants' Motions to Dismiss the Amended Complaint.[31] Accordingly, the filing of the Petition was timed to coincide with events in SIII, connected the Petition and the SIII parties' Motions/Responses, and the actions of the ODC/DC and SIII defendants more generally.

99.     The Petition was not filed until the SIII defendants had the opportunity to evaluate the merits of their dismissal motions (in view of plaintiff's Responses), the likelihood that plaintiff had stated claims, and to determine whether to take additional actions/measures in furtherance of the goals/objectives of the proxy war.

100.     The timing of the Petition was not a serendipitous coincidence but rather an intentional effort to interfere with SIII, part of the continuing effort to harass, intimidate, coerce, extort, and retaliate against plaintiff in connection with plaintiff's claims against all defendants, and to (continue to) facilitate the proxy war.

---

[31] The Petition is based upon events occurring between 2019-2021.  Further, the March 2022 letter and Petition are based upon substantially similar events, which suggests the DC's investigation concluded nearly two years prior to the filing of the Petition.

101.    Although plaintiff repeatedly requested that the Petition for Discipline be withdrawn, defendants ODC, Farrell, and Hernandez have failed/refused to do so.

**Plaintiff's Motion for a Temporary Restraining Order**
**and Preliminary Injunction - Part 1**

102.    On or about March 15, 2024, plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction (TRO/PI) for purposes of enjoining the disciplinary proceedings.[32]  In particular, but not by way of limitation, plaintiff claimed the Petition for Discipline and the Disciplinary Complaints upon which it was based were not filed/pursued based upon a genuine belief that plaintiff had violated the RPC, but rather were for purposes of harassment, intimidation, oppression, coercion, extortion, and retaliation in connection with SIII/SIV, and to facilitate the proxy war more generally.  Plaintiff also argued that it was not possible for plaintiff to commit ethical violations since the tax/PUFTA matters constituted a sham - the City did not file/pursue the matters in order to recover on its claims (and therefore was indifferent to the outcome of the litigation) but rather for purposes of imposing a collateral harm.

103.    Defendants' Responses to the Motion were due on or before March 29, 2024. Defendants William Penn and Haas filed Responses in which they took no position, the judicial/disciplinary defendants filed an untimely Response,[33] and the remaining 22 defendants declined to file Responses of any kind.

---

[32] The Motion was separately filed in both SIII and SIV.
[33] The judicial/disciplinary defendants filed their Response on April 1, 2024.

104.     On or about April 2, 2024, the district court issued a Memorandum Opinion denying the Motion.  Since defendants did not contest the Motion,[34] the decision was directly contrary to the positions of both plaintiff and defendants.[35]  Further, the district court made numerous credibility/fact determinations which are not permissible, at least not without first providing an evidentiary hearing, and also failed to (properly) apply the correct legal standard.  For example, but not by way of limitation, the district court stated, in pertinent part:

> To the extent Silverberg seeks to avoid *Younger* by asserting that the Disciplinary Proceedings (not to mention the Tax and PUFTA Cases) represent "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate," this effort fails because it is founded entirely on conclusory allegations devoid of plausible factual support.

*Mem. Op. at 17-8* (quotation marks in original)(internal cite omitted).  In fact, the City has not filed/pursued the tax/PUFTA matters in order to recover on it claims and never has done so, thereby demonstrating that it has been utilizing legal process/proceedings for alternative, wrongful/unlawful purposes.  Further, the City defendants admitted, among other things:  a) they froze plaintiff's retirement account for nearly two years as a litigation "strategy" and not for purposes of actually recovering on the City's claims; b) they rejected plaintiff's offers in May and July 2021 to pay the full amount the City claimed was due and owing because plaintiff would not relinquish his Constitutional, federal statutory, and other claims (relating to the City's "tax collection activities") against the City/City officials; and c) the City claimed the purpose of its discovery-related activities was to "learn" about plaintiff's finances so the City could "collect on [its] judgment" even though the City already had encumbered funds sufficient to satisfy its

---

[34] The judicial/disciplinary defendant did not timely contest the Motion.
[35] No explanation was provided for the district court's treatment of the Motion, including the reason(s) the Motion was not granted as uncontested.

claims/judgments, rendering discovery (and any further proceedings) completely unnecessary. These are not "conclusory allegations devoid of plausible factual support" but rather are admissions which either establish claims or elements of claims.

105.    A proper reading of the record also demonstrates that the Disciplinary Complaints and Petition for Discipline (which are an outgrowth of the tax/PUFTA matters, which are a sham) were not filed/pursued based upon a legitimate belief that plaintiff violated the RPC but rather were motivated by illegitimate considerations (e.g., harassment, intimidation, coercion, extortion, and retaliation in connection with plaintiff's anticipated book and/or any claims in connection with defendants' wrongful/unlawful conduct), but rather were utilized by defendants as a strategic/tactical device to harass and intimidate plaintiff out his Constitutional/legal rights and claims, as well as to retaliate, thereby barring the application of *Younger* abstention.[36]/[37]

---

[36] In the April 2, 2024 decision, the district court mischaracterized, re-characterized, and/or ignored altogether substantial evidence supporting plaintiff's Motion (including admissions by the City), and instead focused upon aspects of the procedural history that largely are irrelevant to both plaintiff's Motion and the allegations/claims in SIV more generally. The district court stated, in pertinent part:

> Disposition of the Injunction Motion is straightforward. When the conspiracy theories and tangled web of "proxy war" and "Jackson odyssey" allegations are cleared away, the Injunction Motion is revealed as nothing more than Plaintiff's attempt to derail or delay the Disciplinary Proceedings against him.

*Mem. Op. at 15*. The district court not only improperly discounted/disregarded plaintiff's allegations/evidence, but violated plaintiff's right to due process - a court is not permitted to simply "clear[] away" a plaintiff's evidence. The district court also summarily characterized numerous allegations as conclusory, which is belied by the detailed allegations contained in plaintiff's Motion and the SIII/SIV Complaints more generally, and which are fully supported by the facts/record and/or inferences reasonably drawn therefrom. The district court's improper treatment of the record, misapplication of the legal standards, and apparent effort to portray plaintiff in a negative light, all are deeply troubling.

[37] On April 25, 2024, plaintiff appealed the denial of plaintiff's Motion for TRO/PI to the United States Court of Appeals for the Third Circuit.

**Plaintiff's Motion for a Temporary Restraining Order
and Preliminary Injunction - Part 2
The Failure to Oppose Plaintiff's Motions Cannot be
Reconciled with the Ongoing Disciplinary Proceedings**

106.     Nearly every aspect of the federal (and state) cases has been bitterly contested yet

defendants did not oppose plaintiff's Motion for a TRO/PI, including defendant Cullin who filed

one of the Disciplinary Complaints and who continues to participate in the disciplinary

proceedings.[38]

107.     Judicial estoppel prevents a party from taking a position that is inconsistent with

one that the party previously has taken in the same or a previous proceeding.  Judicial estoppel is

particularly appropriate here since defendants made the collective/strategic decision to not

oppose plaintiff's Motion.[39]

108.     Importantly, by not opposing plaintiff's Motion, defendant Cullin did not contest

plaintiff's position that the Disciplinary Complaint he submitted was false/fraudulent, filed in

bad faith, retaliatory, and/or that the disciplinary proceedings in which he continues to participate

are baseless/frivolous and should be enjoined.  Further, by not opposing plaintiff's Motion,

defendant Cullin did not contest plaintiff's position on the merits concerning SIII/SIV.

109.     Defendant Cullin's determination to not oppose plaintiff's Motion for TRO/PI

effectively constitutes an abandonment by him of the Disciplinary Complaint he filed.  In turn,

---

[38] By declining to file Responses to plaintiff's Motion, defendants chose to not oppose the
requested relief and/or plaintiff's positions as set forth in the Motion.
[39] While the judicial/disciplinary defendants offered an explanation for their untimely Response,
the explanation was disingenuous if not completely dishonest.

the Petition for Discipline and/or disciplinary proceedings may not be based (in whole or in part) upon a Complaint and/or any related actions/statement that has since been abandoned.

110.    With respect to the pending disciplinary proceedings - which are being executed as part of the proxy war - the disciplinary defendants cannot proceed in good faith and/or for a proper purpose when one of the Complainants does not dispute that the Disciplinary Complaint he submitted is false/fraudulent and/or has abandoned the Complaint altogether, and the judicial/disciplinary defendants did not timely dispute that the Petition itself has been filed/ pursued in bad faith.

111.    Defendants' decision to not oppose plaintiff's Motion for TRO/PI and/or plaintiff's positions with respect to the issues raised therein now forecloses defendants from taking inconsistent positions on those same issues going forward, especially since it was a collective/strategic decision by defendants.

**The Disciplinary Proceedings**
**The Public Hearing of May 1, 2024**

112.    On May 1, 2024, pursuant to the Petition for Discipline filed by the ODC/DC, a public hearing was held before a Hearing Committee.

113.    The matter is pending.

**COUNT I**
**PLAINTIFF V. CITY OF PHILADELPHIA, JAMES KENNEY,**
**MARCEL S. PRATT, ESQUIRE, DIANA P. CORTES, ESQUIRE,**
**MARISSA O'CONNELL, ESQUIRE, BRIAN R. CULLIN, ESQUIRE,**
**GELLERT SCALI BUSENKELL & BROWN LLC, GARY F. SEITZ, ESQUIRE,**
**OFFICE OF DISCIPLINARY COUNSEL, THOMAS FARRELL, ESQUIRE, RICHARD**
**HERNANDEZ, ESQUIRE, JOSHUA ROBERTS, AND DANIEL ANDERS**
**42 U.S.C. § 1983 - VIOLATION OF CONSTITUTIONAL RIGHTS**

114.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred thirteen (113) as though fully set forth herein.

115.    The conduct of defendants, individually and/or by and through defendants Cullin, Anders, Roberts, Farrell and Hernandez, acting at all times within the course and scope of their employment and in furtherance of their employers' business and interests, constitutes conduct under color of state law and/or official right within the meaning of Section 1983 and which has violated plaintiff's rights to, *inter alia*:  a) free speech/petition as secured by the First Amendment; and b) due process as secured by the Fourteenth Amendment, all to plaintiff's great detriment and loss.[40]

116.    As described in the SIII Amended Complaint, since at least 2017-present, defendants' various activities in connection with the filing/pursuit of the tax/PUFTA matters have been for purposes of the proxy war - a corrupt plan/scheme by the Core Defendants and/or others on behalf of all defendants whereby the tax/PUFTA matters were utilized to, *inter alia*: a) delay, deter, dissuade, and/or prevent the publication of plaintiff's anticipated book, any account by plaintiff of the subject matter of the book, and/or any related claims in connection with the wrongful/unlawful activities of the Core Defendants, the companies/organizations with which

---

[40] As described herein, the challenged conduct resulted in a loss or deprivation of plaintiff's rights, privileges, and immunities and/or a deprivation of life, liberty, and/or property as secured by the Fourteenth Amendment.

they were/are affiliated, and those other individuals/entities whose wrongful/unlawful conduct is encompassed thereby and/or relevant thereto, and in fact have interfered with such publication, account, and/or claims; and b) retaliate against plaintiff for engaging in protected activity, namely the filing/pursuit of plaintiff's Constitutional, federal statutory, and other claims against defendants.

117.    The Disciplinary Complaints filed by defendants Anders and Cullin were not based upon a legitimate, good faith belief or evidence that plaintiff had violated the RPC, and in fact, did not identify any violations of the RPC, but rather were for the specific purpose of facilitating the proxy war.

118.    The ODC/DC did not conduct a proper/legitimate investigation in connection with the Disciplinary Complaints, which included the failure to properly consider and evaluate the relevant exculpatory and inculpatory evidence, including the actual facts in connection with the City's activities in the tax/PUFTA matters and the reasons for those activities.  Had the ODC/DC done so, they would have determined that the tax/PUFTA matters were a sham, did not constitute a bona fide grievance and were not protected by speech/petition clause of the First Amendment, that the City had not filed/pursued the matters in order to recover on its claims but rather to facilitate the proxy war, that plaintiff had engaged in no violation(s) of the RPC, and that it was not possible for plaintiff to do so.  Alternatively, any investigation did not establish a violation(s) of the RPC by plaintiff, yet the ODC/DC still filed/pursued the Petition for Discipline anyway.

119.    With respect to the 65-page Petition for Discipline, which purportedly is based upon the Disciplinary Complaints and/or the ODC/DC's investigation, the ODC/DC summarily concluded that plaintiff violated the RPC without ever identifying an actual violation.  In particular, but not by way of limitation, the ODC/DC failed/refused to: a) identify which specific

actions by plaintiff purportedly violated which specific provisions of the RPC; b) explain how plaintiff supposedly violated the Rules; and c) provide citations/annotations linking specific actions by plaintiff to specific violations.  The failure/refusal to identify any specific violations of the RPC by plaintiff demonstrates that the ODC/DC did not conduct a proper/legitimate investigation, ignored the actual results of any such investigation, and/or simply determined to move forward with a Petition regardless of (the results of) any investigation.

120.    While the ODC/DC has characterized certain allegations, claims, and/or statements by plaintiff as knowingly false/reckless, frivolous, and/or unsupported by the record, there is no foundation for ODC/DC's allegations/claims, which themselves are directly contrary to the record.[41]  Further, but not by way of limitation, the Petition for Discipline is:  a) pre-empted by SIII; and b) contrary to, and cannot be reconciled with, the actions/positions of the defendants Cullin, Anders, and Roberts in SII/SIII who did not file Rule 11 Motions and who themselves did not claim (in SI-SIII) that plaintiff's allegations/claims were knowingly false/reckless, frivolous, and/or unsupported by the record.

121.    A primary purpose of the Petition is to (attempt to) defend the actions of the City and Judge Roberts at the same time those same actions are being challenged in district court, to portray the City and Judge Roberts in a positive light and plaintiff in a negative light, and/or otherwise to advocate for the City/Judge Roberts in the administrative setting when the City/Judge Roberts themselves are unwilling/unable to advocate for themselves in district court, which is not properly within the ODC/DC's purview and/or relevant to their mandate to enforce the RPC.

---

[41] The DC provided no evidence concerning plaintiff's intent, which is central to such allegations/claims.

122.    The filing of knowingly baseless, bad faith Disciplinary Complaints/Petition for
Discipline violates the First and Fourteenth Amendments.  In particular, but not by way of
limitation:  a) a lawsuit and the claims contained therein are a form of property; b) the
allegations/claims as set forth in SI-SIII are an exercise of, and protected by, the speech/petition
clauses of the First Amendment; c) plaintiff has a property interest in the intellectual property
associated with his anticipated book; d) defendants filed both the Disciplinary Complaints and
Petition for Discipline for purposes of interfering with and/or impairing plaintiff's property rights
as described herein; e) the allegations/claims as set forth in SI-SIII are an exercise of, and
protected by, the speech/petition clauses of the First Amendment; and f) a primary purpose of the
Disciplinary Complaints and Petition was/is to delay, deter, dissuade, and/or prevent the
publication of plaintiff's anticipated book, any account by plaintiff of the subject matter of the
book, and/or any related claims in connection with defendants' wrongful/unlawful activities, as
well as to retaliate against plaintiff for engaging in protected activity, all in violation of
plaintiff's Constitutional rights.  Further, defendants filed/pursued the Complaints/Petition
without any reasonable justification in the service of a legitimate governmental objective.  In so
doing, defendants acted arbitrarily, abused their authority, and engaged in unlawful oppression.

123.    Defendants engage in a policy, practice, and/or custom of utilizing legal and/or
administrative process/procedures for wrongful/unlawful purposes, including but not limited to,
advancing and protecting the professional, commercial, political, personal, and/or other interests
of certain third parties, individuals, their affiliates/affiliated organizations, and/or others.  In
particular, but not by way of limitation, although lawyers swear an oath and are duty-bound to
follow the RPC, and although the ODC/DC have a mandate to enforce the RPC, defendants
violated those same standards in connection with the filing/pursuit of the baseless, bad faith

Disciplinary Complaints and Petition for Discipline, which actually were filed/pursued for purposes of executing and/or facilitating the illegitimate proxy war.

124.    As described herein, because the actions defendants in connection with the filing of the Disciplinary Complaints and Petition for Discipline were not based upon a legitimate, good faith belief or evidence that plaintiff had violated the RPC but rather to facilitate the proxy war, the filing/pursuit of the Complaints/Petition was arbitrary, oppressive, an abuse of power, and/or the exercise of power without any reasonable justification in the service of a legitimate governmental objective, thereby violating plaintiff's Constitutional rights.

125.    For substantially the same reasons the City engaged in Constitutional violations in connection with the filing/pursuit of the tax/PUFTA matters, the actions defendants Cullin, Anders, Roberts, Farrell, and Hernandez in connection with the Disciplinary Complaints and Petition for Discipline have violated plaintiff's Constitutional rights.

126.    Because defendants Cullin, Anders, Roberts, Farrell, and Hernandez acted on behalf of all defendants, and because said defendants executed this aspect of the proxy war on behalf of the Core Defendants/all defendants, the actions by said defendants are assignable to all defendants, who authorized/ratified the conduct described herein.

127.    As relief, plaintiff demands all legal and equitable remedies for all injuries, harms, damages, and losses suffered as the result of defendants' violations of plaintiff's rights as described herein.  In particular, but not by way of limitation, plaintiff demands, as appropriate, to be made whole including, but not limited to, an award of monetary damages, interest on said funds, and any and all fines, penalties, attorney's fees, interest, and costs.  As further relief, plaintiff demands:  a) an award of compensatory damages for his severe personal injuries as

described herein, including but not limited to, damage to and/or loss of personal and professional reputation, severe emotional distress and/or mental anguish with associated physical symptoms, humiliation, anxiety, and stress; b) an award of punitive damages in that defendants' conduct was motivated by an evil motive or intent, and/or was in callous or reckless disregard to the rights of plaintiff and/or others, and/or was intentional and/or reckless, wanton, extreme, and outrageous, and otherwise satisfied the standard of outrageousness necessary to support an award of punitive damages; c) an order enjoining defendants from engaging in similar or like conduct in the future; and d) all fines, penalties, attorney's fees, interest, costs, and all other legal and equitable relief which may be available and the Court deems just and appropriate.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, City of Philadelphia, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT II
### PLAINTIFF V. ALL DEFENDANTS
### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
### INTERFERENCE WITH COMMERCE - 18 U.S.C. §1951

128.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred twenty-seven (127) as though fully set forth herein.

129.    The conduct of defendants, both individually and collectively, constitutes a violation of plaintiff's rights as secured by the Racketeer Influenced and Corrupt Organizations

Act ("RICO"), 18 U.S.C. § 1961 et seq., and in particular but not by way of limitation, 18 U.S.C.

§§ 1962(c), 1951.

130.    The conduct of the defendants, each acting through their employees, associates,

and/or representatives, constitutes conduct of an enterprise through a pattern of racketeering

activity.  In particular, but not by way of limitation:  a) Dupont, Dow, Corteva, IFF, Avantor,

Liberty Mutual, Vanguard, the City, William Penn, Ballard Spahr, Gellert Scali, and ODC

formed a joint association-in-fact or enterprise within the meaning of RICO;[42] b) the activities of

the joint enterprise were operated, managed, and/or otherwise conducted by persons who were

either employed by or associated with said joint enterprise within the meaning of RICO; c) in

addition, Dupont, Dow, Corteva, IFF, Avantor, Liberty Mutual, Vanguard, the City, William

Penn, Ballard Spahr, Gellert Scali, and ODC each conducted their respective enterprises through

the other, and therefore, were "persons" within the meaning of RICO for purposes of doing so;

and d) said persons conducted and/or participated, directly or indirectly, in the joint enterprise's

affairs through a pattern of racketeering activity.  Defendants Breen, Liveris, Gupta, Fibig, Long,

Buckley, Haas, Kenney, Pratt, Cortes, O'Connell, Cullin, Seitz, Farrell, Hernandez, Roberts, and

Anders operated, managed, authorized, and/or administered the joint enterprise, authorized

and/or ratified the corrupt plan or scheme to utilize the Disciplinary Complaints and/or Petition

for Discipline as part of the illegitimate proxy war, as well as any schemes within the overall

scheme, and to do so by knowingly utilizing legal and/or administrative process/proceedings for

wrongful/unlawful purposes.  The joint enterprise comprises an ongoing organization with a

---

[42] Dupont, Dow, Corteva, IFF, Avantor, Liberty Mutual, Vanguard, the City, William Penn, Ballard Spahr, Gellert Scali, and ODC each constitute an association-in-fact or enterprise within the meaning of RICO engaged in, or the activities of which affect, interstate or foreign commerce.

framework for making and carrying out decisions, with members that function as a continuing

unit with established duties, and which is separate, distinct, and apart from the pattern of

racketeering activity in which it engages.

131.    Defendants obstructed, delayed, and/or affected commerce or the movement of an

article or commodity in commerce by extortion, or attempted and/or conspired to do so.

Defendants have endeavored and/or conspired to obtain property from another, with his consent,

induced by wrongful use of actual or threatened force, fear, and/or under color of official right,

in violation of 18 U.S.C. §§ 1951(a), (b).  Defendants have sought to obtain from plaintiff certain

property, and/or threatened/attempted to do so, despite having no legitimate grounds or basis to

do so.  In particular, but not by way of limitation:  a) defendants Anders/Cullin (re: Disciplinary

Complaints) and Farrell/Hernandez (re: Petition for Discipline) filed knowingly baseless

Complaints/Petition with the Disciplinary Board of the Supreme Court of Pennsylvania; b) the

Complaints/Petition were not filed based upon a legitimate, good faith belief or evidence that

plaintiff had violated the RPC, but rather for purposes of the illegitimate proxy war - a corrupt

plan/scheme conceived, organized, and directed by the Core Defendants and/or others and

executed by defendants Anders, Cullin, Roberts, Farrell, and Hernandez on behalf (and for the

benefit) of all defendants whereby the Complaints/Petition were utilized to unlawfully harass,

intimidate, coerce and extort plaintiff, or to attempt to do so, in order to, *inter alia*, delay, deter,

dissuade, and/or prevent the publication of plaintiff's anticipated book, any account by plaintiff

of the subject matter of the book, and/or any related claims in connection with the

wrongful/unlawful activities of the Core Defendants, the companies/organizations with which

they were/are affiliated, and those other individuals/entities whose wrongful/unlawful conduct is

encompassed thereby and/or relevant thereto, and to retaliate against plaintiff for engaging in

protected activity.  The Complaints/Petition specifically were intended to wrongfully/unlawfully

impair plaintiff's law license, and were part of the overall effort to harass, intimidate, oppress,

coerce, threaten, instill fear, and retaliate against plaintiff in connection with the proxy war.

132.    The repeated obstructive/extortionate acts of defendants, as hereinbefore set forth,

were not isolated or sporadic events but rather were all related in that they had the same or

similar purposes, participants, victims, results and/or methods of commission, and/or otherwise

were related by distinguishing characteristics.  Additionally, the actions have continued over a

substantial period of time, pose a threat of continuing racketeering activity, and/or are part of

defendants' regular way of doing business, all of which has and will continue indefinitely into

the future to have an adverse effect upon interstate commerce.

133.    As a direct and proximate result of defendants' pattern of racketeering activity as

described herein, plaintiff has suffered an injury to business or property, and otherwise has been

legally injured within the meaning of RICO.  In particular, but not by way of limitation, plaintiff

has suffered the following damages and losses:  a) the damages and losses described in the SIII

Amended Complaint, which are incorporated by reference as though fully set forth herein; b)

great expenses, delays, and inconvenience (and/or a substantial increase thereto) in connection

with the prosecution of plaintiff's claims and the defense against defendants' actions; c) severe

damage to and/or loss of personal and professional reputation; and d) attorney's fees and costs

and/or a substantial increase thereto, which were required and expended as a direct and/or

proximate result of defendants' racketeering activities.

134.    As relief for defendants' violations of plaintiff's rights as secured by RICO,

plaintiff demands all legal, equitable, and/or other remedies available pursuant to RICO for all

damages, harms, injuries, and losses suffered, including all losses to business and/or property, for

the pattern of racketeering activity.  In particular, but not by way of limitation, plaintiff demands: a) an award of all economic and/or compensatory damages for the losses as hereinbefore set forth; b) punitive, liquidated, and/or treble damages pursuant to 18 U.S.C. § 1964(c); c) an injunction against further violations of plaintiff's rights as secured by the Act; and d) fines, penalties, attorney's fees, interest, costs, and all other legal and equitable relief that may be available and that the Court deems just and appropriate.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT III
## PLAINTIFF V. ALL DEFENDANTS
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## OBSTRUCTION OF JUSTICE - 18 U.S.C. §1512

135.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred thirty-four (134) as though fully set forth herein.

136.    The conduct of defendants, both individually and collectively, constitutes a violation of plaintiff's rights as secured by the Racketeer Influenced and Corrupt Organizations

Act ("RICO"), 18 U.S.C. § 1961 et seq., and in particular but not by way of limitation, 18 U.S.C. §§ 1962(c), 1512(b)-(d).

137.    Defendants knowingly used intimidation, threats, or corruptly persuaded another person, or attempted to do so, or engaged in misleading conduct toward another person, with intent to: 1) corruptly obstruct, influence, or impede an official proceeding, or attempt to do so; and/or 2) intentionally harassed another person and thereby hindered, delayed, prevented, or dissuaded a person from attending or testifying in an official proceeding and/or reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense.

138.    For the same reasons the challenged conduct violates 18 U.S.C. §1951, defendants' actions also violate 18 U.S.C. §1512.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT IV
## PLAINTIFF V. ALL DEFENDANTS
## <u>OBSTRUCTION OF JUSTICE - 18 U.S.C. §1503</u>

139.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred thirty-eight (138) as though fully set forth herein.

140.    The conduct of defendants, both individually and collectively, constitutes a violation of plaintiff's rights as secured by the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and in particular but not by way of limitation, 18 U.S.C. §§ 1962(c), 1503.

141.    Defendants corruptly, or by threats or force, or by threatening letter or communication, influenced, obstructed, or impeded, or endeavored to influence, obstruct, or impede, the due administration of justice.

142.    For the same reasons the challenged conduct violates 18 U.S.C. §1951, defendants' actions also violate 18 U.S.C. §1503.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

**COUNT V**
**PLAINTIFF V. ALL DEFENDANTS**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**
**MAIL/WIRE FRAUD - 18 U.S.C. §§ 1341, 1343**

143.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One

hundred forty-two (142) as though fully set forth herein.

144.    The conduct of defendants, both individually and collectively, constitutes a

violation of plaintiff's rights as secured by the Racketeer Influenced and Corrupt Organizations

Act ("RICO"), 18 U.S.C. § 1961 et. seq., and in particular but not by way of limitation, 18

U.S.C. §§ 1341 and 1343 relating to mail and wire fraud.

145.    The fraudulent plan/scheme described herein was predicated upon, carried out,

advanced, furthered and/or concealed by defendants' use of the mails and wires in violation of 18

U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud), including "innocent" mail/wire

communications, in that there were numerous such communications concerning and/or

secondary to defendants' racketeering activity.

146.    As described herein, the proxy war effectively was a fraud/fraud upon the court

whereby the filing/pursuit of the tax/PUFTA matters was not for the purposes stated in the

Complaints but rather to wrongfully/unlawfully deter, dissuade, and/or prevent plaintiff (by

means of harassment, intimidation, threats, instilling fear, and coercion) from moving forward

with his anticipated book, the publication of any account of defendants' wrongdoing, any related

claims, and to retaliate against plaintiff.  The Disciplinary Complaints and Petition for Discipline

were not filed/pursued based upon a legitimate, good faith belief or evidence that plaintiff had

violated the RPC but rather to facilitate the proxy war, and involved numerous electronic

communications and filings which were part of and/or secondary to the plan/scheme and/or were "innocent" communications and transmitted via the mails and/or wires, including, *inter alia*: a) letter of March 24, 2022 (sent via email) from R. Hernandez to R. Silverberg re: Disciplinary Complaints; b) Petition for Discipline (electronically filed December 6, 2023); c) letter of December 28, 2023 from R. Hernandez to R. Silverberg re: extension to respond to Petition (sent via email); d) Answer to Petition (electronically filed January 29, 2024); and e) various submissions and communications in connection with the proceedings before the Hearing Committee (December 2023-present).

147.    The mails and wires were used and were necessary to further the plan/scheme to defraud as described herein, were detrimentally relied upon as part of the plan/scheme, and resulted in great damage and loss to plaintiff.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

**COUNT VI**
**PLAINTIFF V. ALL DEFENDANTS**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**
**CONSPIRACY - 18 U.S.C. § 1962(d)**

148.     Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred forty-seven (147) as though fully set forth herein.

149.     The conduct of defendants, both individually and collectively, constitutes a violation of plaintiff's rights as secured by the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and in particular but not by way of limitation, 18 U.S.C. § 1962(d).

150.     The conduct of defendants constitutes an agreement or conspiracy to violate RICO within the meaning of 18 U.S.C. § 1962(d).  In particular, but not by way of limitation, in or around April 2016, the Core Defendants formed a conspiracy which ultimately included all defendants.  The purpose of the conspiracy was to wrongfully/unlawfully deter, dissuade, discourage, and/or prevent publication of plaintiff's anticipated book, any account by plaintiff of the subject matter of the book, and/or any related claims in connection with defendants' own wrongful/unlawful activities.  The conspiracy was carried out by/through the City's use of legal process/proceedings for wrongful/unlawful purposes, namely the filing/pursuit of the tax/PUFTA matters, which were not filed/pursued for purposes of actually recovering past due taxes that supposedly are due and owing but rather for purposes of the proxy war, specifically to harass, intimidate, oppress, coerce, threaten, instill fear, extort, and retaliate against plaintiff.

151.     The conspiracy also has been carried out, and furthered, by defendants' wrongful/ unlawful utilization of administrative process/proceedings, namely the filing/pursuit of Disciplinary Complaints and a Petition for Discipline which are not based upon a legitimate,

good faith belief or evidence that plaintiff violated the RPC, but rather to facilitate the illegitimate proxy war.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT VII
### PLAINTIFF V. CITY OF PHILADELPHIA, JAMES KENNEY, MARCEL S. PRATT, ESQUIRE, DIANA P. CORTES, ESQUIRE, MARISSA O'CONNELL, ESQUIRE, BRIAN R. CULLIN, ESQUIRE, GELLERT SCALI BUSENKELL & BROWN LLC, GARY F. SEITZ, ESQUIRE, OFFICE OF DISCIPLINARY COUNSEL, THOMAS FARRELL, ESQUIRE, RICHARD HERNANDEZ, ESQUIRE, JOSHUA ROBERTS, AND DANIEL ANDERS
### 42 U.S.C. § 1983 - RETALIATION

152.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred fifty-one (151) as though fully set forth herein.

153.    Plaintiff engaged in protected activity within the meaning of Section 1983 and the United States Constitution, defendants took a series of adverse actions against plaintiff, and there is casual link between the protected activity and the adverse actions.  In particular, but not by way of limitation, and as described herein:  a) on June 20, 2019, plaintiff filed the Complaint in

SI; b) on October 12, 2020, plaintiff filed the Complaint in SII; c) on May 17, 2023, plaintiff

filed the SIII Complaint; d) on September 25, 2023, plaintiff filed the SIII Amended Complaint;

e) as the result of plaintiff's Complaints, both individually and/or collectively, and which alleged

violations of plaintiff's Constitutional, federal statutory, and other rights, defendants took a

series of adverse actions against plaintiff, namely the various actions described herein in

connection with the filing/pursuit of the Disciplinary Complaints and Petition for Discipline; and

f) there is a causal link between plaintiff's exercise of his rights and the adverse actions.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants,

City of Philadelphia, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel,

James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire,

Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez,

Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of

$150,000, exclusive of interest and costs.


## COUNT VIII
## PLAINTIFF V. ALL DEFENDANTS
## ABUSE OF PROCESS

154.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One

hundred fifty-three (153) as though fully set forth herein.

155.    The conduct of defendants constituted an abuse or a perversion of legal and/or

administrative process.  The conduct of defendants in connection with the improper, illegitimate

filing/pursuit of the Disciplinary Complaints and Petition for Discipline constitutes a perversion

of the process/proceedings, that is, the use of legal/administrative process and proceedings

primarily to accomplish a purpose for which the process/proceedings were not designed, a

wrongful/unlawful purpose designed to obtain an illegitimate and unlawful result, all of which caused damage and harm to plaintiff.

156.    For the same reasons the challenged conduct violates Section 1983, RICO (§1962(c)), and RICO (§1962(d)), defendants' actions also constitute an abuse of process.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT IX
## PLAINTIFF V. ALL DEFENDANTS
## <u>FRAUD</u>

157.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred fifty-six (156) as though fully set forth herein.

158.    Defendants intentionally made a series of false and/or fraudulent misrepresentations and/or omissions, knowing such misrepresentations/omissions were false and/or in reckless disregard for whether they were true or false, which were material to the transaction at hand, with the intent to mislead another to rely on them, which were justifiably

relied upon by plaintiff and/or others, and which resulted in damage or harm to plaintiff proximately caused by the reliance.

159.    For the same reasons the challenged conduct violates Section 1983, RICO (§1962(c)), RICO (§1962(d)), and constitutes an abuse of process, the challenged conduct also constitutes fraud.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT X
## PLAINTIFF V. ALL DEFENDANTS
## DEFAMATION

160.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred fifty-nine (159) as though fully set forth herein.

161.    Defendants gave publicity to a matter concerning plaintiff that placed plaintiff before the public in a false light, the false light in which plaintiff was placed would be highly

offensive to a reasonable person, and defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which plaintiff would be placed.

162.    The statements of the judicial/disciplinary defendants, which are assignable to all defendants, so harmed the reputation of plaintiff as to lower plaintiff in the estimation of the community and/or to deter third persons from associating or dealing with plaintiff, thereby grievously fracturing plaintiff's standing in the community.  Defendants' statements knowingly created the false impression/implication that plaintiff engaged in unethical and/or other wrongful conduct when plaintiff had not done so.

163.    For the same reasons the challenged conduct violates Section 1983, RICO (§1962(c)), RICO (§1962(d)), and constitutes an abuse of process, the challenged conduct also constitutes defamation (false light).

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire, Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders, jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

## COUNT XI
## PLAINTIFF V. ALL DEFENDANTS
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

164.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One hundred sixty-three (163) as though fully set forth herein.

165.    The conduct of defendants was extreme and outrageous, intentional and/or reckless, and caused plaintiff to suffer severe emotional distress with associated physical symptoms.  In particular, the individual and collective actions of defendants, including but not limited to, the intentional use of legal/administrative process/proceedings by lawyers for wrongful/unlawful purposes, including manufacturing reason(s) for purposes of seeking to impair plaintiff's law license (and ability to earn a living), all as part of corrupt plan/scheme to extort plaintiff in connection with the publication of book concerning defendants' wrongdoing, any account by plaintiff of the subject matter of the book, any related claims in connection with defendants' wrongful/unlawful activities, and/or to retaliate against plaintiff for engaging in protected activity, meet the required standard for "outrageousness."

166.    For the same reasons the challenged conduct violates Section 1983, RICO (§1962(c)), RICO (§1962(d)), and constitutes an abuse of process, the challenged conduct also constitutes intentional infliction of emotional distress.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants, Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc., Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation, City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H. Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana

Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire,

Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders,

jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.

**COUNT XII**
**PLAINTIFF V. ALL DEFENDANTS**
**<u>CIVIL CONSPIRACY</u>**

167.    Plaintiff incorporates, by reference thereto, Paragraph Nos. One (1) through One

hundred sixty-six (166) as though fully set forth herein.

168.    Defendants acted with a common purpose to do an unlawful act, or to do a lawful

act by unlawful means or for an unlawful purpose, and committed an overt act in furtherance of

the common purpose, all with an intent to injure plaintiff and/or with malice, and which did

injure plaintiff.

169.    For the same reasons the challenged conduct violates Section 1983, RICO

(§1962(c)), RICO (§1962(d)), and constitutes an abuse of process, the challenged conduct also

constitutes a civil conspiracy.

WHEREFORE, plaintiff, Richard J. Silverberg, demands judgment against defendants,

Dupont De Nemours, Inc., Dow, Inc., Corteva, Inc., International Flavors and Fragrances, Inc.,

Avantor, Inc., Liberty Mutual Group, Inc., The Vanguard Group, Inc., William Penn Foundation,

City of Philadelphia, Ballard Spahr LLP, Gellert Scali Busenkell & Brown LLC, Office of

Disciplinary Counsel, Edward Breen, Andrew Liveris, Rajiv Gupta, Andreas Fibig, David H.

Long, Timothy Buckley, Janet Haas, M.D., James Kenney, Marcel S. Pratt, Esquire, Diana

Cortes, Esquire, Marissa O'Connell, Esquire, Brian R. Cullin, Esquire, Gary F. Seitz, Esquire,

Thomas J. Farrell, Esquire, Richard Hernandez, Esquire, Joshua Roberts, and Daniel Anders,

jointly and/or severally, in an amount in excess of $150,000, exclusive of interest and costs.


## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial concerning all claims which may be tried by a jury.



**RICHARD J. SILVERBERG**


BY: /s/ Richard J. Silverberg
      **RICHARD J. SILVERBERG**
      I.D. No. 48329
      P.O. Box 30433
      Philadelphia, PA 19103
      215-563-6369
      rjs@rjsilverberg.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 13, 2024, a copy of plaintiff's Amended Civil Action was served upon all counsel of record via the district court's electronic filing system.

By:  <u>/s/ Richard J. Silverberg</u>
    RICHARD J. SILVERBERG

<u>May 13, 2024</u>
Date