IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD J. SILVERBERG | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 24-924 |
| DUPONT DE NEMOURS INC. *ET AL.* | : | |

## MEMORANDUM

**SURRICK, J.**                                                                                                                                                                                                   **MAY 5, 2025**

### I.    INTRODUCTION

This Memorandum provides the background and analysis explaining our March 31, 2025, Order dismissing with prejudice Plaintiff's Amended Complaint and all claims asserted therein. ("Dismissal Order," ECF No. 118.)[1] The Dismissal Order granted the following Motions to Dismiss Plaintiff's Amended Complaint filed by all twenty-nine of the named Defendants:

- Philadelphia Court of Common Pleas Judges Joshua H. Roberts ("Judge Roberts") and Daniel J. Anders ("Judge Anders") (collectively, the "Judicial Defendants"), the Office of Disciplinary Counsel ("ODC") of the Disciplinary Board of the Supreme Court of Pennsylvania ("Disciplinary Board"), ODC Chief Disciplinary Counsel Thomas J. Farrell ("Farrell"), and Disciplinary Counsel Richard Hernandez ("Hernandez") (collectively, the "ODC Defendants") (ECF No. 66);

- Janet Haas, M.D. and William Penn Foundation (ECF No. 67);

- Dow, Inc. (ECF No. 68);

- Avantor, Inc. and Rajiv Gupta (ECF No. 69);

- Ballard Spahr LLP and Marcel S. Pratt, Esquire (ECF No. 70);

- Corteva, Inc. (ECF No. 71);

- DuPont de Nemours, Inc. and Edward Breen (ECF No. 72);

---

[1] The Dismissal Order stated that the Court's supporting Memorandum would be issued separately (*id.* at 2), and although Plaintiff's Appeal was docketed on April 4, 2025, the subsequent issuance of this Memorandum is authorized by Third Circuit Local Appellate Rule 3.1. *See* 3d Cir. L.A.R. 3.1 ("No later than 30 days after the docketing of a notice of appeal, the trial judge may file and transmit to the parties a written opinion or a written amplification of a prior written or oral recorded ruling or opinion.")

- International Flavors and Fragrances, Inc. and Andreas Fibit (ECF No. 73);

- Gellert Scali Busenkell & Brown LLC and Gary F. Seitz, Esquire (the "Gellert Scali Defendants") (ECF No. 74);

- Liberty Mutual Group, Inc. and David Long (ECF No. 75);

- The Vanguard Group, Inc. and Timothy Buckley (ECF No. 76);

- the City of Philadelphia (the "City"), former City Mayor James Kenney, former City Solicitor Diana Cortes, Divisional Deputy City Solicitor Marissa O'Connell, and former Deputy City Solicitor Brian R. Cullin ("Cullin") (collectively, the "City Defendants") (ECF No. 78); and,

- Andrew Liveris (ECF No. 81).

(*Id.*)  The Dismissal Order also dismissed as moot Plaintiff's Motion for Partial Summary Judgment Addressed to [the ODC and Judicial Defendants] (ECF No. 96), and Plaintiff's Motion for Summary Judgment Addressed to [the City Defendants and Gellert Scali Defendants] (ECF No. 97).

**II.   BACKGROUND**

This action ("*Silverberg IV*") is the fourth federal lawsuit brought by *pro se* attorney Plaintiff Richard Silverberg ("Silverberg" or "Plaintiff") seeking to challenge state court judgments and proceedings against him.  (*See Silverberg v. City of Philadelphia*, et al., No. 19-2691 ("*Silverberg I*"); *Silverberg, et al. v. City of Philadelphia, et al.*, No. 20-5034 ("*Silverberg II*"); *Silverberg v. DuPont de Nemours, Inc., et al.*, No. 23-1868 ("*Silverberg III*").)  *Silverberg I* and *III* were dismissed by the Court at the pleading stage, and Plaintiff voluntarily dismissed *Silverberg II* before defendants' responses to the amended complaint were due.  (*See Silverberg I*, ECF Nos. 38, 39; *Silverberg II*, ECF No. 30; *Silverberg III*, ECF Nos. 171, 173.)  *See also Silverberg I*, 2020 WL 108619 (E.D. Pa. Jan. 8, 2020) (dismissing amended complaint without prejudice under *Rooker-Feldman* doctrine, *Younger* absention, and principles of comity), *aff'd* 847 F. App'x 152 (3d Cir. 2021); *Silverberg III*, 2024 WL 4566110 (E.D. Pa. Oct. 24, 2024) (dismissing amended complaint under *Rooker-Feldman* doctrine and finding dismissal with

2

prejudice warranted based on futility and inequity of permitting amendment), *appeal docketed*, No. 24-2867 (3d Cir. Oct. 8, 2024).

The background relating to *Silverberg I-III*, including the Tax/PUFTA Cases,[2] the so-called "Jackson Odyssey,"[3] and the "proxy war" theory that Silverberg alleges as the basis for his claims have been described at length in previous opinions. *See*, *e.g.*, *Silverberg III*, 2024 WL 4566110, at *2-8; *see also Silverberg III and IV*, Nos. 23-1868, 24-924, 2024 WL 1442164, at *1 (E.D. Pa. Apr. 2, 2024) (denying Plaintiff's motions to enjoin disciplinary proceedings against him), *appeals docketed*, Nos. 24-1774 (3d Cir. Apr. 30, 2024), 24-1775 (3d Cir. May 1, 2024); *Silverberg I*, 2019 WL 4059015 (E.D. Pa. Aug. 27, 2019) (denying Plaintiff's motion to enjoin collection and enforcement activities in connection with the Tax Case judgment). This background will not be repeated here except as necessary.

    A.    *Silverberg I-III*, the Tax/PUFTA Cases, and the Alleged "Proxy War"

Each of Silverberg's previous related federal lawsuits has attacked the validity of the state court judgments entered against him in the Tax /PUFTA Cases. Each case has been premised on the essential theory that the City did not pursue the Tax/PUFTA Cases and seek to collect the judgments entered therein for legitimate purposes but, rather, in furtherance of alleged schemes to advance the interests of the various defendants and punish Silverberg for exercising his rights. Each case has asserted similar claims under 42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and state common law against an expanding cast of alleged participants in these schemes.

---

[2] The Tax/PUFTA Cases are *City of Phila. v. Richard J. Silverberg & Assoc., PC, et al.*, No. 080301510 (the "Tax Case") and *City of Philadelphia v. Richard J. Silverberg et al.*, No. 190903805 (the "PUFTA Case").

[3] The "Jackson Odyssey" is the term Silverberg uses to refer to a series of lawsuits he pursued in state and federal court as counsel for Mark Jackson from 1999 until approximately 2010.

In *Silverberg I* and *II*, Plaintiff asserted claims against the City and various current and former City officials and counsel alleging that the Tax/PUFTA Cases are a sham the defendants pursued as cover for a scheme to protect and enhance City tax and revenue initiatives.  After Silverberg's actions in connection with the Tax/PUFTA Cases and *Silverberg I* and *II* led to the filing of complaints against him with the Disciplinary Board, he renewed his attacks on the Tax/PUFTA Case judgments by filing *Silverberg III* against twenty-six named defendants, including Judge Roberts.[4]  (*Silverberg III*, ECF No. 1.)  As in the previous cases, *Silverberg III* alleged that the Tax/PUFTA Cases have been pursued for illegitimate purposes as part of a scheme to advance Defendants' interests and harm Plaintiff.  However, in *Silverberg III*, Plaintiff alleged a vastly expanded scheme—a purported years-long "proxy war" he claimed has been waged by more than two dozen individual and entity defendants to prevent him from exposing their alleged wrongdoing in connection with the decades-old Jackson Odyssey litigation and to punish him for exercising his rights.  In our October 24, 2024, Memorandum explaining the dismissal of *Silverberg III* under the *Rooker-Feldman* doctrine (the "*Silverberg III* Memorandum"), we described Plaintiff's allegations in detail, finding them to consist largely, if not entirely, of unsupported factual conclusions, legal conclusions couched as factual allegations, and inferences unsupported by any well-pled facts.  *Silverberg III*, 2024 WL 4566110, at *6-8.  We concluded that the *Silverberg III* Amended Complaint did not plausibly allege the existence of the purported "proxy war" that Plaintiff asserts as the basis for all his claims.  *Id.*  Instead, the allegations revealed that *Silverberg III* was yet another attempt to have this court "directly or indirectly review, negate, void or provide relief that would invalidate" the judgments in the

---

[4] Plaintiff's *Silverberg III* Complaint did not name the other Judicial and ODC Defendants later sued in *Silverberg IV*, and Judge Roberts was removed as a defendant in the *Silverberg III* Amended Complaint.  (*Silverberg III*, ECF Nos. 1, 81.)

4

Tax/PUFTA Cases.  *Id.* at *15.

      **B.**      **The Disciplinary Proceedings**

By letter dated March 24, 2022, the ODC notified Silverberg that it had received and was investigating complaints alleging that he had violated several Rules of Professional Conduct in connection with the Tax/PUFTA Cases and *Silverberg I* and *II*.  (ODC Form DB-7, ECF No. 8-1.)  On December 6, 2023, the ODC filed a Petition for Discipline against Silverberg.  (Disciplinary Petition, ECF No. 8-3.)  *See also* Docket, *Office of Disciplinary Counsel v. Richard Joseph Silverberg*, 172 DB 2023 ("*ODC v. Silverberg*").[5]  The misconduct alleged in the 210-paragraph Disciplinary Petition included Silverberg's repeated failure to comply with court orders in the Tax/PUFTA Cases.  *See* Disciplinary Petition ¶¶ 77, 78, 81, 86, 87, 93, 94, 149, 155, 158, 175, 180, 184, and 192.  The Petition further alleged that Silverberg made numerous knowingly or recklessly false and fraudulent statements about Judge Roberts in the Tax/PUFTA Cases, in letters transmitted to senior judicial officers, and in filings in *Silverberg II*, including accusing Judge Roberts of misconduct, improper and illegal actions, deception, dishonesty, conspiring to engage in unlawful acts, engaging in fraud and/or a cover-up, and civil and criminal violations.  *See*, *e.g.*, *id.* ¶¶ 119-123, 139-140, 147-148, 171-172, and 186-190.  Based on the conduct alleged, the Disciplinary Petition charged Silverberg with violating Pennsylvania Rules of Professional Conduct 3.1, 3.3(a)(1), 3.4(a), 8.2(a), 8.4(c), and 8.4(d).  *Id.* ¶ 210.  On January 29, 2024, Silverberg filed his Answer to the Disciplinary Petition.  (ECF 8-5.)

A Disciplinary Board Committee ("Hearing Committee") held a hearing on May 1 and 2,

---

[5] The docket for *ODC v. Silverberg* and referenced filings therein are available at https://www.padisciplinaryboard.org/for-the-public/find-attorney/attorney-detail/48329/silverberg-richard-joseph?tab=pending (last visited May 2, 2025). We may take judicial notice of matters of public record, including the docket sheets and publicly available filings in the Disciplinary Proceedings.  *See*, *e.g.*, *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

5

2024. *See* Docket, *ODC v. Silverberg*. The ODC and Silverberg submitted their post-hearing briefs on July 1, 2024, and August 9, 2024, respectively. *Id.* On October 9, 2024, the Hearing Committee issued its Report and Recommendation ("Hearing Committee R&R"), which recommended a five-year suspension. *Id.* On October 25, 2024, Silverberg filed exceptions to the Hearing Committee R&R, and the ODC filed a brief in opposition to the exceptions on November 7, 2024. *Id.* The Disciplinary Board adjudicated the matter on January 23, 2025, and filed its Report and Recommendations ("Disciplinary Board R&R") with the Pennsylvania Supreme Court March 11, 2025.[6] *See id.,* Disciplinary Board R&R at 1, 4. The Disciplinary Board R&R concludes that Silverberg violated Rules of Professional Conduct 3.1, 3.3(a)(1), 3.4(a), 8.2(a), 8.4(c), and 8.4(d), and unanimously recommends that he be suspended from the practice of law in Pennsylvania for five years. *See id.*, Disciplinary Board R&R ¶¶ 1-2.

  **C.**  *Silverberg IV*

Silverberg filed this action on March 4, 2024, and filed the Amended Complaint on May 13, 2024. (ECF Nos. 1, 64.) In this lawsuit, Silverberg names all the original *Silverberg III* Defendants, including Judges Roberts and Anders, and adds the ODC and its counsel, Farrell and Hernandez, as Defendants. The Amended Complaint asserts eleven claims essentially identical to those in *Silverberg III*, along with a claim for defamation; restates verbatim or in substance a number of the *Silverberg III* allegations (*see*, *e.g.*, Am. Compl. ¶¶ 42-58); and incorporates the *Silverberg III* Amended Complaint in full. (*Id.* ¶ 41.) Other than bringing the Judicial and ODC Defendants into this action, the only significant difference between the *Silverberg III* Amended Complaint and the Amended Complaint here is the addition of fifty-five allegations regarding the

---

[6] The Disciplinary Board R&R notes that Silverberg did not appear for the prehearing conference scheduled by the Hearing Committee or submit a witness list or exhibit list under the prehearing conference order, and he did not attend the hearing held on May 1 and 2, 2024. *See* Disciplinary Board R&R at 3.

Disciplinary Proceedings. (*Id.* ¶¶ 59-113.) Some of these allegations are unembellished factual statements recounting certain events and filings in the Disciplinary Proceedings. (*See, e.g., id.* ¶¶ 59, 60, 63, 65, 71, 81, 91, 102, 112, 113.) However, most of the new allegations consist of unsupported factual conclusions, legal conclusions couched as factual allegations, and unwarranted inferences. Such allegations include Silverberg's characterization of the Disciplinary Proceedings and the alleged deficiencies in those proceedings and the ODC investigation of the complaints against Silverberg (*see, e.g., id,* ¶¶ 66, 80-83, 88-89, 96-99); unsupported conclusory allegations that the ODC and its counsel are pursuing the Disciplinary Proceedings as part of the "proxy war" (*see, e.g.,* ¶¶ 67, 100, 105, 110); and various legal conclusions. (*See, e.g.,* ¶¶ 70, 72-73, 75, 84, 87, 94.) The Amended Complaint seeks the same relief as was sought in *Silverberg III* and, notably, alleges that the Disciplinary Proceedings "are an outgrowth of the tax/PUFTA matters," which are being pursued "to facilitate the proxy war." (*See* Am. Compl. ¶¶ 102, 105; see also id. ¶¶ 67, 100, 117, 124, 130-131, 146, 151.)

### III.   LEGAL STANDARD

#### A.   Dismissal For Lack of Jurisdiction Under Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may present either a "facial" or "factual" challenge. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). A facial challenge contends that a claim is insufficient on its face to invoke the court's subject matter jurisdiction, and it "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)." *Id.* at 358. "A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.* The instant Motions to Dismiss—like those in *Silverberg III*—present facial challenges to the Amended Complaint. *See Silverberg III*, 2024 WL 4566110, at *11.

7

### B.     Sufficiency of Pleadings Under Fed. R. Civ. P. 8, 9(b), and 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Rule 8 further requires that "[e]ach allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  "Taken together, Rules 8(a) and [8(d)(1)] underscore the emphasis placed on clarity and brevity by the federal pleading rules."[7]  *In re Westinghouse Secs. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996) (citing Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1217 at 169 (2d ed. 1990)).  The complaint must include enough facts "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Alleged claims that rely on nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor will "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Id*. at 555, 557.

---

[7] Complaints that constitute "shotgun pleadings" are among those that violate Rule 8.  *See Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017).  "The Third Circuit has criticized 'the all too common shotgun pleading approach' to complaints," which is contrary to the mandates of Rule 8(a)(2). *See id.* (quoting *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031, n.13 (3d Cir. 1988)).  The Court of Appeals for the Eleventh Circuit has produced much of the caselaw addressing shotgun pleadings, and "district courts within the Third Circuit often cite to the Eleventh Circuit for this law." *Id.* at 859, n.3; *see also Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320-1323 (11th Cir. 2015).  Among the four categories of shotgun pleadings are complaints that "contain[] multiple counts where each count adopts the allegations of all preceding counts" and those that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."  *Weiland*, 792 F.3d at 1321-23; *see also Bartol*, 251 F. Supp. 3d at 859 (quoting *Weiland* categorization of shotgun pleadings).

In addition to the pleading requirements of Rule 8, Rule 9(b) imposes a heightened pleading standard for fraud claims, providing that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Where a RICO claim is predicated on mail or wire fraud, those acts are subject to the heightened requirements of Federal Rule of Civil Procedure 9(b). *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002). Under Rule 9(b), malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, in permitting intent to be alleged "generally," Rule 9(b) "merely excuses a party from pleading . . . intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 686-87 (citing C. Wright & A. Miller, Federal Practice & Procedure § 1301, p. 291 (3d ed. 2004)).

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plaintiffs may plead allegations based upon information and belief, "so long as there are no 'boilerplate and conclusory allegations' and '[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'" *McDermott v. Clondalkin Group, Inc*., 649

9

F. App'x 263, 267-68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)).

Under the Rule 12(b)(6) standard, a court must accept a complaint's well-pleaded factual allegations as true, but "legal conclusions couched as factual allegations, conclusory factual allegations, and threadbare recitations of a cause of action are insufficient to state a facially plausible claim." *Iqbal*, 556 U.S. at 678-79. Thus, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id.* at 678 (alterations in original) (quoting *Twombly*, 550 U.S. at 557). Under Rule 12(b)(6), "a complaint must be dismissed if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, the complaint fails to show that the plaintiff has a plausible claim for relief." *Swope v. Northumberland Nat. Bank*, No. 14-4020, 2015 WL 4591794, at *2 (3d Cir. July 30, 2015) (internal quotation marks and citation omitted).

## IV.  DISCUSSION

### A.  The *Rooker-Feldman* Doctrine Bars Plaintiff's Claims Challenging the Tax/PUFTA Case Judgments

We previously dismissed *Silverberg III,* concluding that the *Rooker-Feldman* doctrine barred all the claims asserted therein. See *Silverberg III*, 2024 WL 4566110, at *13-16. Plaintiff's Amended Complaint here incorporates the *Silverberg III* Amended Complaint *in toto*. It does not add any well-pled allegations regarding the *Silverberg III* Defendants, assert any new theories of liability against any of the Defendants, or seek any relief that would not effectively nullify the Tax/PUFTA Case judgments. Rather, and despite Silverberg's addition of the Judicial/ODC Defendants and allegations regarding the Disciplinary Proceedings, this action is merely a further attempt—if not an unauthorized amendment of previous attempts—to challenge the state court judgments in the Tax/PUFTA cases in contravention of the *Rooker-Feldman*

10

doctrine. Plaintiff's only effort to evade the *Rooker-Feldman* doctrine is the assertion that he is not challenging any state court orders or judgments. We rejected that argument in the *Silverberg III* Memorandum, and we do so here for the same reasons. Accordingly, for the reasons set forth in the *Silverberg III* Memorandum, all of Plaintiff's claims against all the Defendants named in this action are barred by the *Rooker-Feldman* doctrine.

### B. Judicial Immunity Bars All Claims Against the Judicial Defendants

Under the doctrine of judicial immunity, Judges Roberts and Anders have absolute immunity from suit for actions taken in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11-12, (1991); *Martinez v. Eagle Disposal*, 783 F. App'x 206, 209 (3d Cir. 2019) ("[A] judge has absolute immunity for actions performed in a judicial capacity." (citations omitted)). Judicial immunity stems from "the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000). Judicial immunity is not only immunity from damages, but also immunity from suit. *Mireles v. Waco*, 502 U.S. 9, 11 (U.S. 1991). A "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Silverberg's claims against Judges Roberts and Anders are premised entirely on actions performed in their judicial capacities, and Plaintiff does not contend otherwise. Instead, he argues that he "has not challenged the actions or decisions of the Judicial Defendants in connection with the state cases." (Silverberg Resp. to Judicial/ODC Defs.' Mot., ECF No. 85, at 9.) This assertion is refuted by the allegations of the Amended Complaint, which challenge and impugn the Judicial Defendants' actions in connection with the Tax/PUFTA Cases. (*See, e.g.*, Am. Compl. ¶¶ 67, 89, 93, 96.)

### C. Eleventh Amendment Immunity and Quasi-Judicial Immunity Bar Plaintiff's Claims Against the ODC Defendants

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment serves as 'a jurisdictional bar which deprives federal courts of subject matter jurisdiction.'" *Murphy v. Off. of Disciplinary Couns.*, No. 17-1239, 2019 WL 4752059, at *16 (E.D. Pa. Sept. 30, 2019) (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996)), *aff'd*, 820 F. App'x 89 (3d Cir. 2020).

Before discussing the scope and application of Eleventh Amendment immunity, we note that Silverberg's Response to the Judicial/ODC Defendants' Motion fails to address either. (Silverberg Resp. to Judicial/ODC Defs.' Mot., ECF No. 85, at 8-10.) Instead, Plaintiff conflates or confuses Eleventh Amendment immunity with *qualified immunity* and argues that Judicial/ODC Defendants are not entitled to the latter because, he claims, they violated his statutory and constitutional rights, "which were clearly established, and of which a reasonable person would have known." (*Id.* at 9.) Putting aside the fact that this argument is premised on conclusory allegations not entitled to any presumption of truth, Silverberg's discussion of qualified immunity is entirely beside the point. Eleventh Amendment immunity is separate and distinct from qualified immunity, which the ODC Defendants have not raised as a basis for dismissal of Silverberg's claims. As the First Circuit Court of Appeals has explained:

> [T]he purposes served by the doctrine of qualified immunity are distinct from those served by the Eleventh Amendment. State sovereign immunity is intended primarily to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties. Qualified immunity, however, is a right to immunity from certain claims, not from litigation in general.

*Espinal-Dominguez v. Com. of Puerto Rico*, 352 F.3d 490, 499, n.4 (1st Cir. 2003) (internal quotations and citations omitted); *see also Gaither v. Thompson*, No. 19-13398, 2021 WL 5411219, at *6 (E.D. Mich. Oct. 25, 2021) (noting plaintiff's "misguided" effort to overcome defendants' Eleventh Amendment immunity by disputing their "entitlement to 'qualified immunity' based on violations of his 'clearly established rights'"), *report and recommendation adopted*, 2021 WL 5396100 (E.D. Mich. Nov. 18, 2021); *Graham v. Murtland*, No. 16-149, 2018 WL 259399, at *1 (W.D. Mich. Jan. 2, 2018) ("It is well recognized that personal immunities such as qualified immunity are separate and distinct from sovereign immunity under the Eleventh Amendment.) (internal quotation and citation omitted); *Blum v. Schlegel*, 830 F. Supp. 712, 724 (W.D.N.Y. 1993) ("It appears that plaintiff is blurring Eleventh Amendment immunity with qualified immunity. 'The privilege . . . [of] qualified immunity [is] . . . entirely distinct from the immunity conferred by the Eleventh Amendment.'" (quoting *Gan v. the City of New York*, 996 F.2d 522, 529 (2d Cir. 1993))), *aff'd*, 18 F.3d 1005 (2d Cir. 1994).

Turning to the relevant issue, "[the Eleventh] Amendment 'has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court." [8] *Murphy*, 2019 WL 4752059, at *16. "The Pennsylvania Supreme Court and the Disciplinary Board have exclusive jurisdiction over attorney disciplinary issues involving, among others, '[a]ny attorney

---

[8] As the court in *Murphy* recognized, Eleventh Amendment immunity is "'subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law.'" 2019 WL 4752059, at *16 n.23 (quoting *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). In this case, as in *Murphy*, the first two exceptions do not apply. *Id.* (noting that "Congress did not intend to abrogate Eleventh Amendment immunity by enacting 42 U.S.C. § 1983," and Pennsylvania's enactment of 42 Pa. C.S. § 8521(b) "expressly indicates that the Commonwealth has not waived its Eleventh Amendment immunity from suit in federal courts"). To the extent Plaintiff seeks injunctive relief against the ODC or its counsel, the *Younger* abstention doctrine precludes such relief.

admitted to practice law in th[e] Commonwealth of Pennsylvania.'" *Murphy*, 2019 WL 4752059, at *3 (quoting Pa. R.D.E. 201(a)(1)); *see also Bauer v. Pa. State Bd. of Auctioneer Examiners*, 154 A.3d 899, 904 (Pa. Commw. Ct. 2017) (citing Pa. Const. art. V, § 10(c)). "The ODC is responsible for, *inter alia*, 'investigat[ing] all matters involving alleged misconduct called to their attention whether by complaint or otherwise.'" *Id.* (quoting Pa. R.D.E. 207(b)(1)); Pa. Disciplinary Bd. R. 93.63(a)(1)). "The ODC may also 'prosecute all disciplinary proceedings before hearing committees, special masters, the Board and the Supreme Court.'" *Id.* (quoting Pa. Disciplinary Bd. R. 93.63(a)(3)).

Pennsylvania's unified judicial system encompasses the Disciplinary Board—of which the ODC is a part—and Eleventh Amendment immunity bars Silverberg's claims against both agencies. *See Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 795 (M.D. Pa. 2009). With respect to Farrell and Hernandez, all of Silverberg's allegations are based on their official-capacity work for the Disciplinary Board and the ODC. Accordingly, Eleventh Amendment immunity likewise bars Plaintiff's claims for non-injunctive relief against the ODC counsel. *See Murphy*, 2019 WL 4752059, at *16 (collecting cases holding that Eleventh Amendment immunity bars claims against the Disciplinary Board, the ODC, and the officials thereof).

Silverberg's claims against ODC counsel Farrell and Hernandez are also barred by quasi-judicial immunity. Derived from judicial immunity, quasi-judicial immunity serves to insulate from liability "'certain others who perform functions closely associated with the judicial process.'" *Murphy*, 2019 WL 4752059, at *17 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). As the court in *Murphy* noted, "[n]umerous federal courts in this Commonwealth have concluded that Disciplinary Board members and ODC members are protected by quasi-judicial immunity." 2019 WL 4752059, at *18.

### D.     *Younger* Absention Bars Interference in the Disciplinary Proceedings

"The *Younger* abstention doctrine 'reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.'" *Feingold v. Off. of Disciplinary Couns.*, 487 F. App'x 743, 744 (3d Cir. 2012) (quoting *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir. 1992)). "Under that doctrine, 'federal courts must abstain in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding.'" *Id.* at 745 (quoting *Miller v. Mitchell*, 598 F.3d 139, 145 (3d Cir. 2010)). The Supreme Court has recognized that "state attorney disciplinary proceedings are exactly the type of proceedings envisioned by *Younger*." *Koresko v. Off. of Disciplinary Coun. of the Disciplinary Bd. of the Sup. Ct. of Pa. ex rel. Killion*, No. 14-1154, 2015 WL 1312269, at *3 (E.D. Pa. Mar. 24, 2015) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

For the *Younger* abstention doctrine to apply, three conditions must be satisfied: (1) state court proceedings must be ongoing and judicial in nature; (2) the state court proceedings must implicate important state interests; and (3) those proceedings must afford an adequate opportunity to raise federal claims. *See Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010) (citing *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005)). If all three prongs of the *Younger* analysis are met, federal courts should abstain unless there is a showing of "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Feingold*, 487 F. App'x at 745 (citing *Middlesex*, 457 U.S. at 435).

We previously denied Silverberg's Motion asking the Court to enjoin the ongoing Disciplinary Proceeding, concluding that the *Younger* abstention doctrine precluded our interference with those proceedings. *Silverberg III and IV*, 2024 WL 1442164, at *9. In so ruling, we also noted the absence of any plausible allegations suggesting bad faith, harassment,

15

or other extraordinary circumstances that would make abstention inappropriate. *Id.* The same reasoning applies here. As with Silverberg's previous Motion, the relief sought in the Amended Complaint would interfere with the pending Disciplinary Proceedings and is precluded by the *Younger* doctrine.

### E. Dismissal with Prejudice is Warranted

In the *Silverberg III* Memorandum, we concluded that the futility and inequity of further amendment compelled dismissal of Plaintiff's claims with prejudice. The same reasoning applies with equal or greater force here, as the Judicial/ODC Defendants added in this action have immunity that cannot be overcome by amendment of Plaintiff's claims.

## V. CONCLUSION

For the foregoing reasons, the Amended Complaint and all claims alleged therein have been dismissed with prejudice. (*See* ECF No. 118.)

**BY THE COURT:**


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**